No. 05-1042C
(Judge Lettow)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

THE DALLES IRRIGATION DISTRICT,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

KELLY B. BLANK
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Attorneys for Defendant

Of Counsel:
CLARK MILLER
Attorney-Advisor
Office of the Solicitor
United States Department of the Interior
Pacific Northwest Region, Boise Field Office
Boise, ID 83706

January 26, 2006

## TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S MOTION TO DISMISS ..... 1

DEFENDANT'S BRIEF ..... 1

ISSUE PRESENTED ..... 1

STATEMENT OF THE FACTS ..... 2

ARGUMENT ..... 7

I. Standard Of Review ..... 7

II. This Court Should Dismiss Dalles's Complaint For Lack Of Subject Matter Jurisdiction Because Dalles's Claim For Damages Arising Out Of An Allegedly Improper Power Cost Formula Developed in 1989 And Applied Without Modification Since 1989 Is Barred By The Statute Of Limitations ..... 8

A. Dalles's Claim For Breach Of Contract Accrued More Than Six Years Before The Filing Of Its Initial Complaint In District Court ..... 9

B. The Continuing Claim Doctrine Does Not Apply To Preserve Dalles's Claim ..... 12

CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) .......... 11

Ariadne Financial Services Pty. Ltd. v. United States,
133 F.3d 874 (Fed. Cir. 1998) .......... 12, 13

Brown Park Estates-Fairfield Development Co. v. United States,
127 F.3d 1449 (Fed. Cir. 1997) .......... 12, 13

Burich v. United States,
177 Ct. Cl. 139, 366 F.2d 984 (1966) .......... 12

Conley v. Gibson,
355 U.S. 41 (1957) .......... 7

Cubic Def. Sys. Inc. v. United States,
45 Fed. Cl. 239 (1999) .......... 8

Davidson v. United States,
66 Fed. Cl. 206 (2005) .......... 13

Dynalectron Corp. v. United States,
4 Cl. Ct. 424, aff'd, 758 F.2d 665 (Fed. Cir. 1984) .......... 8

Friedman v. United States,
159 Ct. Cl. 1, 310 F.2d 381 (1962) .......... 12

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573 (Fed. Cir. 1988) .......... 9, 10

Indium Corp. of Am. v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985), cert. denied, 479 U.S. 820 (1986) .......... 8

Maniere v. United States,
31 Fed. Cl. 410 (1994) .......... 8

Martinez v. United States,
48 Fed. Cl. 851 (2001) .......... 9

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) .......... 7

Scheuer v. Rhodes,
416 U.S. 232 (1974) .......... 7

Toney v. United States,
43 Fed. Cl. 28 (1999) .......... 13

United States v. King,
395 U.S. 1 (1969) .......... 8

United States v. Sherwood,
312 U.S. 584 (1941) .......... 8

United States v. Testan,
424 U.S. 392 (1976) .......... 8

**STATUTES**

28 U.S.C. § 2501 .......... 7, 8, 9

## INDEX TO APPENDIX


| Item | Page |
| --- | --- |
| Public Law No. 86-745, dated September 13, 1960 | 1 |
| Contract No. 14-06-100-2276, dated October 19, 1961 | 3 |
| Letter to Don Dean, from John W. Keys III, dated August 23, 1989 | 41 |
| Letter to John W. Keys III, from Don W. Bailey, dated September 6, 1989 | 42 |
| Letter to Don W. Bailey, from Terrald E. Kent, dated September 28, 1989 | 43 |
| Letter to Bureau of Reclamation, from Don W. Bailey, dated October 4, 1989 | 45 |
| Notice of Pumping Power Charges, dated February 15, 1990 | 46 |
| Approval of Rate Revision, dated November 16, 1990 | 47 |
| Rate Revision No. 1, The Dalles Project, effective January 1, 1990 | 49 |
| Rate Revision No. 2, The Dalles Project, effective January 1, 1995 | 53 |
| Memorandum, dated May 15, 1995 | 57 |
| Record of Execution of Contract, dated May 13, 1996 | 59 |
| Rate Revision No. 3, The Dalles Project, effective January 1, 2002 | 61 |
| Letter to Mike Richardson, from Terrald E. Kent, dated August 24, 2001 | 65 |
| Letter to Bill McDonald, from Marvin Polehn, undated | 66 |
| Letter to Terrald E. Kent, from Arden E. Shenker, dated May 15, 2003 | 67 |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE DALLES IRRIGATION DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-1042C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint of plaintiff, The Dalles Irrigation District ("Dalles"), for lack of subject matter jurisdiction. In support of this motion, we rely upon the complaint, the following brief, and the appendix accompanying this brief.[1]

**DEFENDANT'S BRIEF**

**ISSUE PRESENTED**

Whether this Court possesses jurisdiction to entertain Dalles's claim for damages arising out of the application of defendant's formula to calculate Dalles's annual power costs where Dalles's claim is filed more than six years after the current formula was created by the Bonneville Power Administration in 1989, approved by the Secretary of the Interior ("Secretary") in 1990, and has been applied to calculate Dalles's power rate since 1989.

---

[1] Citations to "Compl. ¶ __" refer to a specific paragraph of Dalles's complaint. "Def. App. __" refers to citations to the appendix accompanying this brief.

## STATEMENT OF THE FACTS

Dalles's complaint alleges that the United States Department of the Interior ("DOI") breached its 1961 agreement with Dalles by improperly calculating the power costs for which Dalles is liable under the terms of the agreement. Compl. ¶ 5.

In 1960, Congress authorized DOI's Bureau of Reclamation to construct the Western Division of The Dalles Project upon the Columbia River in Oregon. See Pub. L. No. 86-745 § 2(c) (1960) (Def. App. 1). The authorizing legislation provided that power and energy required for irrigation pumping for The Dalles Project

> shall be made available by the Secretary from The Dalles Dam powerplant and other Federal plants interconnected therewith at rates not to exceed the costs of such power and energy from The Dalles Dam taking into account all costs of the dam, reservoir, and powerplant which are determined by the Secretary under the provisions of the Federal reclamation laws to be properly allocable to such irrigation pumping power and energy.

Id.

On October 19, 1961, Dalles and the United States entered into Contract No. 14-06-100-2276 ("Contract"), pursuant to Pub. L. No. 86-745, to construct The Dalles Irrigation Project for the purpose of delivering water to certain lands along the Columbia River. Def. App. 5-6. The Contract stated that DOI would provide to Dalles, from The Dalles Dam powerplant, the power and energy required for irrigation pumping. Def. App. 16. The Contract provided that power and energy would be furnished to Dalles

> at rates per kilowatt-hour sufficient to cover the costs of such power and energy from The Dalles Dam, taking into account all costs of the dam, reservoir and powerplant which are determined

> by the Secretary under the provisions of the Federal Reclamation Laws to be properly allocable to such irrigation pumping power and energy. The initial rate shall be one (1) mill per kilowatt-hour. This rate of one (1) mill shall be effective for the first irrigation season and shall continue until such time as the Secretary determines, in accordance with the provisions set forth above, that a different rate is applicable. Such a determination shall not be made more frequently than once in any five-year period.

Def. App. 16-17. Both the Contract and authorizing legislation provided that power would be furnished to Dalles from hydroelectricity generated at The Dalles Dam, operated by the United States Army Corps of Engineers ("Corps"), and transmitted by the Bonneville Power Administration ("BPA"), which markets power generated by Federal facilities located within the Federal Columbia River Power System. Def. App. 1, 16. In exchange, Dalles would pay "all costs of the dam, reservoir and powerplant which are determined by the Secretary . . . to be properly allocable to such irrigation pumping power and energy." Def. App. 1, 16-17. The Contract further provided that "payment of [Dalles's] charges for power supply . . . shall be made each calendar year on the basis of annual estimates by the Secretary," and, if actual costs are determined to be either higher or lower, Dalles would incur either a supplemental charge or obtain a credit, respectively. Def. App. 17-18.

In 1989, the BPA proposed to the Bureau of Reclamation a revised formula to determine Dalles's power rate for the period 1990-1994, effective January 1, 1990. Def. App. 49-52. The revised formula included a Lost Revenue component to determine the annual cost of lost revenue by (1) adjusting the prior rate to reflect the difference between the rate and actual costs for the previous five-year period, and (2) predicting future cost increases to narrow the difference between the revised rate and actual costs that would not be known until the next rate

determination. Def. App. 49-50. In addition, the revised formula included components for annual depreciation and the costs of operation and maintenance associated with power generation. Def. App. 50. As a result of the new formula, Dalles's proposed rate for the period 1990-1994 was 1.23 mills per kilowatt-hour. Def. App. 49.

On August 23, 1989, John W. Keys III, Regional Director of the Bureau of Reclamation, informed Dalles that the revised rate proposal would go into effect upon an interim basis subject to approval by the Secretary. Def. App. 41. On September 6, 1989, Don W. Bailey, Dalles's Chairman of the Board, wrote to DOI regarding the revised rate proposal. In his letter, Mr. Bailey stated that "I assume that your office is aware of the various specific terms of our contract with the Government as to power cost . . . . At our Board of Directors meeting last evening, the Board expressed concern about how [Dalles's] rate could increase 2½ times in about five years." Def. App. 42. Mr. Bailey requested further information so that Dalles "may understand how that cost has been calculated under your new formula." Id.

On September 28, 1989, Terrald E. Kent, the Bureau of Reclamation's Acting Regional Supervisor of Water, Power and Lands, provided cost data to Dalles reflecting the "typical costs of The Dalles Powerplant which are used in determining the irrigation pumping power rate . . . compiled by the [BPA] from data supplied by the [Corps]." Def. App. 43-44. In addition, Mr. Kent's letter set a date for the parties to meet and discuss the calculation of the rate. Id.

On October 4, 1989, Mr. Bailey informed DOI that the cost data provided was not "pertinent" and asserted that "[o]peration & maintenance were specifically excluded in

calculating our power cost."[2] Def. App. 45. Mr. Bailey requested the "current generation cost at The Dalles Dam, in accordance with terms of our contract." Id.

On February 15, 1990, DOI issued a notice of pumping power charges to Dalles for calendar year 1990 based upon the revised BPA formula. Def. App. 46. On November 16, 1990, the Assistant Secretary, Water and Science, approved the proposed revision to Dalles's power cost formula. Def. App. 47-48.

In 1994, DOI adjusted the rate for power and energy at The Dalles Dam to 1.31 mills per kilowatt-hour, effective January 1, 1995. Def. App. 53. DOI applied the same methodology for determining Dalles's power rate that it used for the period 1990-1994, including depreciation costs, operation and maintenance costs, and a Lost Revenue component in its calculations. Compare Def. App. 53-56, with Def. App. 49-52. In a DOI memorandum dated May 15, 1995, the Manager of the Power Resources Office stated that "[n]o change is proposed in the methodology for determining the rates." Def. App. 57. On May 13, 1996, the updated charges for Dalles's power and energy costs were approved. Def. App. 59-60.

In 2001, DOI adjusted the rate for power and energy at The Dalles Dam to 2.59 mills per kilowatt-hour, effective January 1, 2002. Def. App. 61. DOI applied the same methodology for determining Dalles's power rate that it used for the period 1990-2001, including depreciation costs, operation and maintenance costs, and a Lost Revenue component in its calculations. Compare Def. App. 61-64, with Def. App. 49-52, 53-56. On August 24, 2001, Mr. Kent

---

[2] Mr. Bailey appears to have misunderstood that the cost data provided to him related to operation and maintenance costs associated with power generation, not power transmission. See Def. App. 44. Although the Bureau of Reclamation and BPA agreed in 1961 that Dalles would not be charged operation and maintenance costs associated with power transmission, Dalles is responsible for costs associated with power generation.

informed Dalles that DOI had established a revised rate for the period 2002-2006. Def. App. 65.

In an undated letter to DOI, Marvin Polehn, Dalles's Chairman of the Board of Directors, stated:

> The position of the Board of Directors of The Dalles Irrigation District concerning [Dalles's] power rate continues to be the position set forth in that letter from former Board Chairman Don Bailey to the Bureau of Reclamation dated October 4, 1989, a copy of which is attached . . . .
>
> The formula continuously used to compute [Dalles's] power rate since 1961 has never included a charge for a "lost revenue component," nor does our contract provide for such a charge. Rather, our rate is to be based solely on generation costs at the Dalles Dam.

Def. App. 66.[3]

On May 15, 2003, Dalles's attorney wrote to Mr. Kent and reiterated Dalles's position that, under the power rate formula, Dalles has been "overcharged, since 1989," stating:

> Prior to 1989 [Dalles] was charged at the rate of 1 mil per kilowatt hour. That was the original contemplation in the agreement with you. If you can explain to us how that portion of the bills that have been tendered to [Dalles] shows, since 1989, that the actual costs of the production of power are in excess of that 1 millage rate, we will appreciate your making those explanations for us.

Def. App. 67-68.

On August 18, 2004, Dalles filed a complaint in the United States District Court for the District of Oregon against DOI alleging breach of contract. On September 28, 2005, the district court transferred Dalles's complaint to this Court. On October 25, 2005, Dalles filed its amended complaint with this Court.

---

[3] Manifestly, Dalles's power rate has included a Lost Revenue component since 1989. Def. App. 49-50.

Dalles seeks recovery from the United States in the amount of $400,000.00 for damages arising out of application of the 1989 power cost formula since 1998,[4] as well as a declaratory judgment that Dalles "should not be charged . . . for any costs for power and energy . . . required for irrigation pumping during the irrigation season, other than those costs as provided by the contract between the parties." Compl. ¶¶ 8, 11.

## ARGUMENT

### I. Standard Of Review

In general, the Court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Subject matter jurisdiction, however, may be challenged by the parties or raised by the Court at any time, and, if jurisdiction is found to be lacking, the Court must dismiss the action. See RCFC 12(h)(3).

In evaluating a motion to dismiss for lack of subject matter jurisdiction, the Court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236-37 (1974); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988). Notwithstanding this general rule, it is well settled that where the movant challenges specific jurisdictional facts set forth in the

---

[4] Implicitly acknowledging the application of the six-year statute of limitations set forth in 28 U.S.C. § 2501, Dalles suggests that it is entitled to all damages flowing from the Government's alleged breach which have accrued since 1998, or within the six years prior to the filing of its complaint in district court. Compl. ¶ 8. However, Dalles does not identify what event in 1998 constitutes an alleged breach of the 1961 agreement. Indeed, an updated rate was not charged to Dalles in 1998. Rather, in 1998, Dalles was still paying its power costs according to the rate which had been first assessed against Dalles in 1995 (based upon application of the 1989 formula adopted by DOI). Def. App. 65. The 1995 rate continued to apply until 2002. Id.

complaint, the Court may consider all relevant evidence (including matters not raised in the pleadings) and make any factual findings necessary to resolve the issue of jurisdiction. See, e.g., Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985), cert. denied, 479 U.S. 820 (1986); Maniere v. United States, 31 Fed. Cl. 410, 413 (1994). Where the underlying jurisdictional facts are challenged, plaintiff bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence. See, e.g., Cubic Def. Sys. Inc. v. United States, 45 Fed. Cl. 239, 245 (1999).

II. This Court Should Dismiss Dalles's Complaint For Lack Of Subject Matter Jurisdiction Because Dalles's Claim For Damages Arising Out Of An Allegedly Improper Power Cost Formula Developed in 1989 And Applied Without Modification Since 1989 Is Barred By The Statute Of Limitations

The United States Court of Federal Claims is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984). Its jurisdiction to entertain a suit and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of sovereign immunity of the United States cannot be implied, but must be unequivocally expressed by Congress. Testan, 424 U.S. at 399; United States v. King, 395 U.S. 1, 4 (1969). Absent congressional consent to entertain a claim against the United States, the Court of Federal Claims lacks authority to grant relief. Testan, 424 U.S. at 399; Sherwood, 312 U.S. at 586.

Dalles's claim arising from the approval and application of a new power cost formula since 1989 is barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501. Section 2501 states that "[e]very claim of which the United States Court of Federal Claims has

jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The six-year statute of limitations "is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988).

To prove that its claim is not time barred, Dalles must show that its "claim first accrued within six years of the filing of the complaint." Martinez v. United States, 48 Fed. Cl. 851, 857 (2001) (emphasis added). A claim first accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." Hopland Band, 855 F.2d at 1577.

### A. Dalles's Claim For Breach Of Contract Accrued More Than Six Years Before The Filing Of Its Initial Complaint In District Court

Dalles filed its complaint in the district court on August 18, 2004, and its complaint in this Court on October 25, 2005. The Government's alleged breach of the Contract arising from the approval of an allegedly improper power cost formula, however, occurred more than six years before Dalles filed its original complaint in district court. Even assuming arguendo that the Government did breach the Contract by approving the addition of certain components to the formula for Dalles's power rate, Dalles's claim accrued, at the latest, on November 16, 1990, when the Assistant Secretary approved the formula upon behalf of the Secretary. Def. App. 48. Although the rate charged to Dalles has been adjusted periodically since 1989, the formula itself has remained unchanged since Dalles was first notified of its development in 1989, and its approval by the Secretary in 1990.

In addition, the fact that Dalles possessed knowledge in 1989 of its potential cause of action supports the conclusion that the statute of limitations accrued at that time. Hopland Band, 855 F.2d at 1577-78 (claim accrues when claimant knew or should have known that claim existed). In 1989, Dalles was notified that a new formula had been adopted to calculate its power rate and exchanged a series of letters with DOI articulating its concerns regarding the formula revisions. Def. App. 41-45. On September 6, 1989, Don Bailey, the Chairman of the Dalles Board of Directors, stated that "I assume that your office is aware of the various specific terms of our contract with the Government as to power cost," and requested further information so that the Board "may understand how that cost has been calculated under your new formula." Def. App. 42 (emphasis added). After receiving explanatory cost data from DOI, on October 4, 1989, Mr. Bailey rejected the cost data as not "pertinent," and requested the "current generation cost at [t]he Dalles Dam, in accordance with terms of our contract." Def. App. 45. Thus, Dalles's Board of Directors plainly believed that the new formula may have violated the terms of the Contract.

However, despite believing that the revised formula was contrary to the terms of the Contract, Dalles waited 12 years to take any action. It waited to express its concerns about the rate formula until after it was informed of the rate increase to take effect on January 1, 2002. In an undated letter sent to DOI after notification of the rate increase for the 2002-2006 period, Marvin Polehn, Dalles's Chairman of the Board of Directors, stated:

> The position of the Board of Directors of The Dalles Irrigation District concerning [Dalles's] power rate continues to be the position set forth in that letter from former Board Chairman Don Bailey to the Bureau of Reclamation dated October 4, 1989, a copy of which is attached . . . our rate is to be based solely on generation costs at the Dalles Dam.

Def. App. 66 (emphasis added). By its own admission, Dalles's objection to the 2002 power rate increase is the same as its objection to the 1990 rate increase, and based entirely upon a formula that, in Dalles's view, includes components not permitted under the terms of its Contract. Indeed, in a letter to DOI, Dalles's attorney reiterated Dalles's position that, under the 1989 rate formula, Dalles had been "overcharged, since 1989." Def. App. 67 (emphasis added). Dalles's attorney further explained that

> Prior to 1989 [Dalles] was charged at the rate of 1 mil per kilowatt hour. That was the original contemplation in the agreement with you. If you can explain to us how that portion of the bills that have been tendered to [Dalles] shows, since 1989, that the actual costs of the production of power are in excess of that 1 millage rate, we will appreciate your making those explanations for us.

Def. App. 68 (emphasis added). The correspondence reflects the fact that Dalles rested upon its rights by not seeking damages until 2004 for being "overcharged, since 1989," based upon a rate formula which allegedly violated the terms of the Contract. Def. App. 67.

Although unclear, Dalles's complaint suggests that the Government's alleged breach re-accrued each year in which it was charged power costs according to the 1989 BPA formula. Compl. ¶ 8. Dalles's allegation incorrectly assumes that the alleged breach occurred annually despite the fact that all of the events which first fixed the Government's liability, assuming that the 1989 formula constituted a breach, occurred in 1989 and 1990. In the case of an alleged breach of contract, "a cause of action accrues when the breach occurs." Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (quotation omitted). In its complaint, Dalles alleges that a breach arises from the fact that "defendants have been charging [Dalles] with costs for the operation, maintenance, and replacement of facilities, together with interest expenses,

none of which had been agreed to between the parties." Compl. ¶ 5. Assuming arguendo that this allegation is true, the Government first determined to charge such expenses when it revised the power cost formula in 1989 and the Assistant Secretary approved the revised formula in 1990. Accordingly, all of the events fixing the Government's alleged liability occurred in 1989 and 1990.

B. The Continuing Claim Doctrine Does Not Apply To Preserve Dalles's Claim

Dalles may not avail itself of the continuing claim doctrine in order to satisfy the statute of limitations because the alleged breach flows from specific events which occurred outside of the limitations period. The continuing claim doctrine "operates to save later arising claims even if the statute of limitations has lapsed for earlier events." Ariadne Financial Services Pty. Ltd. v. United States, 133 F.3d 874, 879 (Fed. Cir. 1998). In order for the continuing claim doctrine to apply, Dalles's claim "must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." Brown Park Estates-Fairfield Development Co. v. United States, 127 F.3d 1449, 1456 (Fed. Cir. 1997). In Friedman v. United States, 159 Ct. Cl. 1, 310 F.2d 381, 384-85 (1962), the Court of Claims explained that the continuing claim doctrine is limited generally to cases where the Government has a duty to make periodic payments, such as military and civilian pay cases where the plaintiff is statutorily entitled to payment, because "where the payments are to be made periodically, each successive failure to make proper payment gives rise to a new claim." See also Burich v. United States, 177 Ct. Cl. 139, 366 F.2d 984, 986 (1966) (finding that failure to make overtime payments to plaintiff constituted separate violations of the applicable statute each time payment was not made). However, "a claim based upon a single distinct event, which may have continued

ill effects later on, is not a continuing claim." Brown Park, 127 F.3d at 1456. Dalles's claim is more like the latter style of claim because it arises from two distinct events: the revision of the formula in 1989 and the approval of the revised formula in 1990. Although Dalles alleges that it was damaged every year in which an allegedly improper power rate was applied, the later adverse effects constitute damages resulting from DOI's approval of a formula which allegedly violated the terms of its agreement with Dalles.

The court in Brown Park further explained that, in cases where courts have found that a claim may be "broken down into a series of independent and distinct wrongs or events, . . . . Each wrong constituted an alleged violation of a statute or regulation that accrued when that particular wrong occurred, independent of the accrual of other wrongs." Brown Park, 127 F.3d at 1457 (emphasis added); See also Ariadne Financial, 133 F.3d at 879-80 (continuing claim doctrine did not apply where Government's liability was fixed when it rejected a term of its contract entitling plaintiff to the use of supervisory goodwill, despite the fact that the Government subsequently repeatedly denied such use); Davidson v. United States, 66 Fed. Cl. 206, 209-10 (2005) (continuing claim doctrine does not apply where the claim concerns the Government's recalculation of plaintiff's payments in 1995, despite the fact that subsequent monthly payments were made according to the alleged miscalculation); Toney v. United States, 43 Fed. Cl. 28, 31 (1999) (continuing claim doctrine does not apply where plaintiff fails to allege "an independent violation of any cited statute or regulation during the six years prior to instituting suit").

In this case, the alleged wrong to Dalles — applying an annual power rate according to an improper formula — occurred when the formula which serves as the basis of Dalles's claim was first developed and approved. The fact that Dalles's power rate was adjusted periodically

according to the 1989 formula does not mean that a new wrong was committed against Dalles every time costs were assessed at a new power rate. In other words, the periodic recalculations of Dalles's power rate are not independent wrongs; rather, each new power rate is based upon one formula, and the alleged wrong flows from the inclusion in that formula of components which allegedly violate the terms of Dalles's agreement. See Def. App. 49-52, 53-56, 61-64.

Because Dalles does not allege that the Government's breach of contract accrued within the six years prior to filing its complaint in the district court on August 18, 2004, this action is barred by the statute of limitations. Consequently, this Court is without jurisdiction to entertain Dalles's claim for damages in its complaint. RCFC 12(b)(1).

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant defendant's motion to dismiss for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/ FRANKLIN E. WHITE, JR.
FRANKLIN E. WHITE, JR.
Assistant Director

S/ KELLY B. BLANK
KELLY B. BLANK
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Attorneys for Defendant

Of Counsel:

CLARK MILLER
Attorney-Advisor
Office of the Solicitor
United States Department of the Interior
Pacific Northwest Region, Boise Field Office
Boise, ID 83706

January 26, 2006

## CERTIFICATE OF FILING

I hereby certify that on January 26, 2006, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ KELLY B. BLANK