IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE DALLES IRRIGATION DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-1042C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

---

# DEFENDANT'S APPENDIX
# IN SUPPORT OF ITS MOTION TO DISMISS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

KELLY B. BLANK
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Attorneys for Defendant

Of Counsel:

CLARK MILLER
Attorney-Advisor
Office of the Solicitor
United States Department of the Interior
Pacific Northwest Region, Boise Field Office
Boise, ID 83706

January 26, 2006

# INDEX TO APPENDIX


| Item | Page |
|---|---|
| Public Law No. 86-745, dated September 13, 1960 | 1 |
| Contract No. 14-06-100-2276, dated October 19, 1961 | 3 |
| Letter to Don Dean, from John W. Keys III, dated August 23, 1989 | 41 |
| Letter to John W. Keys III, from Don W. Bailey, dated September 6, 1989 | 42 |
| Letter to Don W. Bailey, from Terrald E. Kent, dated September 28, 1989 | 43 |
| Letter to Bureau of Reclamation, from Don W. Bailey, dated October 4, 1989 | 45 |
| Notice of Pumping Power Charges, dated February 15, 1990 | 46 |
| Approval of Rate Revision, dated November 16, 1990 | 47 |
| Rate Revision No. 1, The Dalles Project, effective January 1, 1990 | 49 |
| Rate Revision No. 2, The Dalles Project, effective January 1, 1995 | 53 |
| Memorandum, dated May 15, 1995 | 57 |
| Record of Execution of Contract, dated May 13, 1996 | 59 |
| Rate Revision No. 3, The Dalles Project, effective January 1, 2002 | 61 |
| Letter to Mike Richardson, from Terrald E. Kent, dated August 24, 2001 | 65 |
| Letter to Bill McDonald, from Marvin Polehn, undated | 66 |
| Letter to Terrald E. Kent, from Arden E. Shenker, dated May 15, 2003 | 67 |

Public Law 86-745

September 13, 1960
[S. 2195]

AN ACT

To authorize the Secretary of the Interior to construct, operate, and maintain the western division of The Dalles Federal reclamation project, Oregon, and for other purposes.

Dalles Federal reclamation project, Oreg.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That for the purpose of furnishing water for the irrigation of approximately five thousand five hundred acres of arid land in Wasco County, Oregon, the Secretary of the Interior is authorized to construct, operate, and maintain the western division of The Dalles Federal reclamation project, Oregon. The western division shall consist of the following principal works: a main pumping plant to be located at a site on the Columbia River; a booster and relift pumping plants with reregulating reservoirs; and a distribution system.

43 USC 371 note.

SEC. 2. (a) In constructing, operating, and maintaining the western division of The Dalles project, the Secretary shall be governed by the Federal reclamation laws (Act of June 17, 1902, 32 Stat. 388, and Acts amendatory thereof or supplementary thereto).

53 Stat. 1195.
43 USC 485h.

(b) The period provided in subsection (d) of section 9 of the Reclamation Project Act of 1939, as amended, for repayment of construction costs properly allocable to any block of lands and assigned to be repaid by the irrigators may be extended to fifty years, exclusive of a development period, from the time water is first delivered to that block or to as near that number of years as is consistent with the adoption and operation of a repayment formula as therein provided. Costs allocated to irrigation in excess of the amount determined by the Secretary to be within the ability of the irrigators to repay within a fifty-year period shall be returned to the reclamation fund within a fifty-year period from the date of the first delivery of water from the facilities authorized by this legislation from net revenues derived by the Secretary of the Interior from the disposition of power marketed through the Bonneville Power Administration, which are over and above those required to meet any present obligations assigned for repayment from such net revenues. The term "construction costs" used herein shall include any irrigation operation and maintenance costs during the development period which the Secretary finds it proper to fund because they are beyond the ability of the water users to pay during that period.

(c) Power and energy required for irrigation pumping for the western division of The Dalles Federal reclamation project shall be made available by the Secretary from The Dalles Dam powerplant and other Federal plants interconnected therewith at rates not to exceed the costs of such power and energy from The Dalles Dam taking into account all costs of the dam, reservoir, and powerplant which are determined by the Secretary under the provisions of the Federal reclamation laws to be properly allocable to such irrigation pumping power and energy.

72 Stat. 563.

(d) That portion of the cost of constructing the works authorized by this Act which the Secretary finds to be properly allocable to the conservation and development of fish and wildlife, in accordance with the Fish and Wildlife Coordination Act (48 Stat. 401, as amended, 16 U.S.C. 661, and the following), together with the portion of the operation, maintenance, and replacement costs allocated to this function, shall be nonreimbursable and nonreturnable under the reclamation laws.

SEC. 3. There is hereby authorized to be appropriated for construction of the works authorized by this Act not to exceed $6,000,000, plus or minus such amounts, if any, as may be justified by reason of ordinary fluctuations in construction costs as indicated by engineering cost indices applicable to the types of construction involved herein. Appropriation.

Approved September 13, 1960.

## Public Law 86-746

AN ACT

To make permanent law the provisions of section 408 of the National Housing Act regulating savings and loan holding companies.

September 13, 1960 [S. 3619]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That subsection (g) of section 408 of the National Housing Act (12 U.S.C. 1730a.(g)) is hereby repealed.

73 Stat. 691. Repeal.

Approved September 13, 1960.

## Public Law 86-747

AN ACT

Authorizing the President of the United States of America to present a gold medal to Robert Frost, a New England poet.

September 13, 1960 [S. 3439]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the President is authorized to present, in the name of Congress, an appropriate gold medal to Robert Frost in recognition of his poetry, which has enriched the culture of the United States and the philosophy of the world. For such purpose, the Secretary of the Treasury shall cause to be struck a gold medal with suitable emblems, devices, and inscriptions to be determined by the Secretary.

Robert Frost. Presentation of medal.

SEC. 2. There is authorized to be appropriated the sum of $2,500 to carry out the provisions of this Act. Appropriation.

Approved September 13, 1960.

## Public Law 86-748

JOINT RESOLUTION

To remove copyright restrictions upon the musical composition, "Pledge of Allegiance to the Flag", and for other purposes.

September 13, 1960 [H. J. Res. 704]

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled*, That the musical composition "Pledge of Allegiance to the Flag", covered by copyright EU399400, granted to Irving Caesar on June 3, 1955, assigned by Irving Caesar to Congressman Louis C. Rabaut by an instrument recorded in the Office of the Register of Copyrights in assignment record book 942 at page 57, and assigned by Congressman Louis C. Rabaut to the Congress of the United States by an instrument recorded in the Office of the Register of Copyrights in assignment record book 943 at page 451, is hereby declared to be in the public domain.

Musical composition, "Pledge of Allegiance to the Flag". Removal of copyright restrictions.

Contract No.
14-06-100-2276

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Western Division
The Dalles Project, Oregon

## REPAYMENT CONTRACT BETWEEN THE UNITED STATES OF AMERICA AND THE DALLES IRRIGATION DISTRICT


| Article No. | Title | Page No. |
|---|---|---|
| 1 | Preamble | 1 |
| 2-5 | Explanatory Recitals | 1-2 |
| 6 | Definitions | 2 |
| 7 | Term of Contract | 3 |
| 8 | Description and Cost of Project Works | 3-5 |
| 9 | Payment of District's Construction Charge Obligation | 5 |
| 10 | Adjustment of Annual Installments | 5-6 |
| 11 | Development Period | 6-9 |
| 12 | Care, Operation and Maintenance of Project Works | 9-10 |
| 13 | Operation and Maintenance Charges; Levies and Assessments | 10-12 |
| 14 | Project Power Supply | 12-14 |
| 15 | Keeping Project Works in Repair; Inspection | 14 |
| 16 | Reserve and Replacement Fund | 14-15 |
| 17 | District Irrigable Area | 15-16 |
| 18 | Statement of Costs | 16-17 |
| 19 | Default; Assumption of Control of Project Works by the United States | 17-19 |
| 20 | Penalty for Delinquency in Payment | 19 |
| 21 | Refusal to Deliver Water in Case of Default | 19-20 |
| 22 | General Obligations - Assessments | 20 |
| 23 | All Benefits Conditioned Upon Payment | 20-21 |
| 24 | Excess Lands | 21-22 |
| 25 | Lands Not to Receive Water Until Owners Thereof Execute Certain Contracts | 22-24 |
| 26 | Valuation and Sale of Excess Lands | 25-26 |
| 27 | Water Rights | 27 |
| 28 | Protection of Water Supply | 27-28 |
| 29 | United States Not Liable for Water Shortage or Interruptions | 28 |
| 30 | Title to Project Works | 28 |
| 31 | Performance of Work With Contributed Funds | 29 |


EXHIBIT
3
Jones

| Article No. | Title | Page No. |
|---|---|---|
| 32 | Books, Records, and Reports ............................... | 29-30 |
| 33 | Crop Returns and Census ................................... | 30-31 |
| 34 | Inspection and Other Charges to be Paid by the District ............................................ | 31-32 |
| 35 | Regulations and Determinations of Fact .................... | 32 |
| 36 | Confirmation of Contract .................................. | 32-33 |
| 37 | Changes in District Organization .......................... | 33 |
| 38 | Contract Amendment ........................................ | 33 |
| 39 | Notices ................................................... | 33 |
| 40 | Discrimination Against Employees or Applicants for Employment Prohibited ................................ | 34-36 |
| 41 | Contingent on Appropriations or Allotment of Funds ........ | 36 |
| 42 | Assignments Prohibited; Successors and Assigns Obligated ................................................ | 37 |
| 43 | Officials Not to Benefit .................................. | 37 |
| | Signatures ................................................ | 37 |

Contract No.
14-06-100-2276

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Western Division
The Dalles Project, Oregon

REPAYMENT CONTRACT BETWEEN THE UNITED STATES OF AMERICA
AND THE DALLES IRRIGATION DISTRICT

THIS AGREEMENT, made this 19th day of October 1961, by and between THE UNITED STATES OF AMERICA, hereinafter called the United States, acting through the Regional Director, Region 1, Bureau of Reclamation, upon authorization of the Secretary of the Interior and pursuant to the Federal Reclamation Laws, including particularly the Act of September 13, 1960 (74 Stat. 882), and THE DALLES IRRIGATION DISTRICT, hereinafter called the District, an irrigation district organized and existing under and by virtue of the laws of the State of Oregon,

WITNESSETH, THAT:

Explanatory Recitals

2. WHEREAS, there are 2,340 acres of land within the District presently being irrigated by pumping from ground water or by diverting intermittent stream flows, and in recent years excess pumping has resulted in an alarming drop in the ground water table with the result that the water supply is no longer reliable and a new source of water must be obtained to maintain and expand the existing economy; and

3. WHEREAS, there are within the District approximately an additional 3,080 acres which can be irrigated and for which a water supply is required; and

4. WHEREAS, the District is on high ground adjacent to the Columbia River which river provides a reliable source of water for irrigation purposes; and

5. WHEREAS, the District desires the United States to construct pumping facilities and an irrigation distribution system substantially in accordance with the plan set out in House Document No. 431, 86th Congress, 2d Session;

NOW, THEREFORE, in consideration of the mutual and dependent stipulations herein set forth, it is hereby covenanted and agreed as follows:

## Definitions

6. The following terms used in this contract shall have the following respective meanings:

"Secretary" shall mean the Secretary of the Interior or his duly authorized representative.

"Federal Reclamation Laws" shall mean the Act of June 17, 1902 (32 Stat. 388), and all acts amendatory thereof or supplementary thereto, including without limitation by this enumeration the Act of September 13, 1960 (74 Stat. 882).

"Project works" shall mean the entire works constructed in connection with this contract.

Term of Contract

7. This contract shall become effective upon its execution by the Secretary, and shall remain in effect until specifically terminated by mutual agreement of the parties hereto.

Description and Cost of Project Works

8. (a) To the extent funds are, or may be made available therefor, the United States, within the limitations of this contract, will construct the following principal project works which are to be used in whole or in part in connection with the irrigation of lands within the jurisdiction of the District:

(1) Mill Creek pumping plant to divert water of the Columbia River, discharge line, booster and relift plants, together with equalizing reservoirs and surge tanks.

(2) A closed pipe distribution and lateral system to provide irrigation water delivery at sprinkler pressures together with drainage facilities and other incidental project facilities. Individual turnouts will be provided for each tract in a single ownership as of January 1, 1961.

(3) Electrical facilities to transform and transmit pumping power from the existing The Dalles substation of the United States to the main pumping plant, booster, and relift pumping plants.

The projects works will be substantially in accordance with the general plan therefor set out in House Document No. 431, 86th Congress, 2d Session.

(b) Should it appear necessary or desirable to the Secretary, after consultation with the District, either before or during construction, the works mentioned or described by this article may be modified in design or location, or works may be eliminated or added to that mentioned or described above.

(c) The estimated cost of the works described in this article, exclusive of funded operation and maintenance is six million dollars ($6,000,000) of which seventeen thousand six hundred dollars ($17,600) is estimated to be the cost of fish screens which cost is to be nonreimbursable and nonreturnable. The District's repayment obligation under this contract is based on the premise that actual reimbursable cost of these project works will not exceed this estimate. If the Secretary finds at any time that the works required to carry out the objectives of this contract cannot be completed at a reimbursable cost within this estimate, he shall consult with the District's Board of Directors and may make continuation of construction contingent on the completion of arrangements with the District for the assumption of all or some part of the estimated increased reimbursable costs in addition to the construction charge obligation stated in article 9. In the event the Secretary does make continuation of construction contingent on the completion of such arrangements, and the District does not assume the increased obligation, or in the event additional appropriations are not available or authorized, the Secretary may

notify the District the work is deemed completed and the District's construction charge obligation shall be either the amount provided in article 9 or the amount of the then completed work allocated by the Secretary to irrigation for repayment by the District, whichever is the smaller.

Payment of District's Construction Charge Obligation

9. (a) Of the amount set out in article 8 above, together with the amount of funded cost of operation and maintenance, if any, as provided for in article 11, only the sum of two million five hundred fifty thousand dollars ($2,550,000) is fixed as the District's construction charge obligation. This obligation is hereby made a general obligation of the District without regard to delinquencies or default with respect to particular lands within the District.

(b) The District shall pay to the United States the construction charge obligation in fifty (50) successive annual installments, the first of which shall be due and payable on December 31 of the first calendar year following the development period. The annual installment shall be determined by dividing by 50 the construction charge obligation of the District.

Adjustment of Annual Installments

10. The amount of each of the annual installments provided in article 9 may be increased or decreased annually in accordance with a formula, established to make adjustments for annual variations in economic conditions pertinent to the payment capacity of the users of irrigation water

in the District with the objective of repaying the District's construction charge obligation within a 50-year repayment period. This formula and the first installment to which it shall apply, shall be established by mutual agreement between the Board of Directors of the District and the Secretary supplementing this contract and shall thereafter remain in effect for all subsequent years in which a construction charge installment is due to the United States.

Development Period

11. (a) For all irrigable lands of the District there will be a development period of ten (10) years. The development period will commence with the year for which water is announced as available to the District by the Secretary. If the said announcement of availability of water is not delivered to the District by the Secretary prior to December 1 of the year preceding that for which water will be available, the first year of the development period will be the first year following that in which water is available as announced by the Secretary. During this development period it will not be necessary for the District to make payments to the United States on the construction charge obligation, but the District shall collect a development period charge for such lands, such charge to be announced annually by appropriate notice to the District from the Secretary on or before December 1 of each calendar year of the development period for

this succeeding year. Development period charges shall, over the entire period, be sufficient to cover all operation and maintenance costs involved, including power charges, with annual charges adjusted so that deficits in the early years of the period will be offset by higher charges in the later years of the period, except for such amounts as the Secretary has found proper to fund because they are beyond the ability of the water users to pay during the development period. From the date that the care, operation and maintenance of the works are transferred to the District pursuant to article 12, such charge fixed by the Secretary shall include as a minimum the estimate of the District of the operation and maintenance for such year and the charge shall be collected by the District. Any deficit existing when the works are taken over by the District during the development period shall be repaid by the District to the United States before the end of the development period on terms satisfactory to the Secretary, except for those amounts which may be funded as set forth above. The first development period charge shall be included in the notice to be given by the Secretary announcing the commencement of the development period. If, during the development period, the works are being operated by the United States, the development period charge shall be fixed by the Secretary to be payable to the United States. Any credit over and above the cost of operation and maintenance at the close of the development period shall be credited to the District's construction charge obligation in a manner to be determined by the Secretary.

(b) The development period charge shall provide for a minimum charge against each irrigable acre within the District and payment of such minimum development period charge shall be required whether or not water is used. The amount of water in acre-feet per acre which is to be delivered each year on payment of the minimum development period annual charge shall be one and one-half acre-feet. For water to be delivered each year in excess of that delivered for the minimum charge, the landowners or water users involved shall pay an additional water charge as follows:

(1) for the first one-half acre-foot per acre, at a rate per acre-foot equal to the rate per acre-foot charge for water made available for the year under the annual minimum development period charge;

(2) for the second one-half acre-foot per acre, at a rate per acre-foot equal to one hundred twenty percent (120%) of the rate per acre-foot charged for water made available for the year under the annual minimum development period charge;

(3) for the third one-half acre-foot per acre, at a rate per acre-foot equal to one hundred forty percent (140%) of the rate per acre-foot charged for water made available for the year under the annual minimum development period charge; and

(4) for each acre-foot or fraction thereof per acre in excess of three acre-feet per acre, at a rate per acre-foot equal to one hundred sixty percent (160%) of the rate per acre-foot charged for water made available for the year under the annual minimum development period charge.

(c) This is to recognize Contract No. 14-06-100-2032 entered into between the United States and the District dated November 30, 1960, providing for the District to advance the sum of one thousand dollars ($1,000.00) to complete the land classification survey. The said sum of one thousand dollars ($1,000.00), as provided in said contract, is to be applied against the first year's development period charge.

Care, Operation and Maintenance of Project Works

12. (a) The United States will operate and maintain the project works until their transfer to the District. At any time following the notice to the District of the beginning of the development period, the Secretary may, upon appropriate written notice to the District, transfer to it and the District shall assume the care, operation and maintenance of all or any part of the project works which in the Secretary's opinion may be appropriately so transferred at such time. Transfer of equipment and supplies required, as determined by the Secretary, in connection with the operation and maintenance of the project works shall be made concurrently and the costs thereof charged to construction costs of the project.

(b) The District shall, at its own cost and without expense to the United States, care for, operate and maintain any project works being operated by it in such manner that they will remain in good and efficient condition and of equal capacity for the carrying and distribution of irrigation water as of the date of transfer to the District, and shall use all practical methods to insure the economical and beneficial use of water.

(c) During periods in which any of the project works, or any part thereof, are operated and maintained by the United States, the cost of such operation and maintenance shall be paid in advance by the District to the United States, except development period costs for which other repayment arrangements are made pursuant to article 11. Payments under this subarticle (c) shall be on the basis of the procedures established under the provisions of paragraphs (b), (c), and (d) of article 19.

(d) During the period of operation and maintenance of project works by the District, the District will undertake to maintain and operate the fish screens. So long as the fish screens are properly operated and maintained by the District the sum of one thousand seven hundred dollars ($1,700) will be annually credited during the development period to development period charges owing to the United States and thereafter annually credited to the construction charge installment owing to the United States.

Operation and Maintenance Charges; Levies and Assessments

13. (a) The provisions of this article are made with the object, among other things, of encouraging the economical use of water and of distributing the operation and maintenance charges equitably among the lands of the District.

(b) Beginning with the close of the development period, the District shall assess against the lands in the District an amount necessary to cover the costs of operation and maintenance. The assessments to be made hereunder shall be uniform for all lands in the District except as otherwise provided in paragraph (c) of this article, unless at the option of the District a minimum charge is established for tracts of five acres or less in a single ownership. All charges to be made under the terms of this contract, exclusive of construction charge installments, and of development period charges, shall be included in such assessments.

(c) The District in establishing and collecting per acre charges, shall levy a minimum annual operation and maintenance charge against each irrigable acre within the District and the payment of such minimum charge shall be required whether or not water is used. Payment shall be in advance of the delivery of water to any irrigable land in one ownership. The amount of water in acre-feet per acre which is to be delivered each year on payment of the minimum annual charge shall be two acre-feet. For water to be delivered each year in excess of that delivered for the minimum charge the landowners or water users involved shall pay to the District an additional water charge as follows:

(1) for the first one-half acre-foot per acre, at a rate per acre-foot equal to one hundred twenty percent (120%) of the rate per acre-foot charged for water made available for the year under the annual minimum charge;

(2) for the second one-half acre-foot per acre, at a rate per acre-foot equal to one hundred forty percent (140%) of the rate per acre-foot charged for water made available for the year under the annual minimum charge; and

(3) for each acre-foot or fraction thereof per acre in excess of three acre-feet per acre, at a rate per acre-foot equal to one hundred sixty percent (160%) of the rate per acre-foot charged for water made available for the year under the annual minimum charge.

(d) To carry out the provisions of this article, the District shall measure the water delivered to each farm turnout and keep individual farm turnout delivery water records.

Project Power Supply

14. (a) For the purposes of operating and maintaining the project works, the Secretary will make available to the District that power and energy required for irrigation pumping during the irrigation season from The Dalles Dam powerplant and other federal powerplants connected therewith. The power and energy will be furnished to the District at the point where the project 12.5-kv electric distribution line is connected to The Dalles substation of the United States or at such other points as are agreed upon between the United States and the District, at rates per kilowatt-hour sufficient to cover the costs of such power and energy from The Dalles Dam, taking into account all costs of the dam, reservoir and powerplant which are determined by the Secretary under the provisions of

the Federal Reclamation Laws to be properly allocable to such irrigation pumping power and energy. The initial rate shall be one (1) mill per kilowatt-hour. This rate of one (1) mill shall be effective for the first irrigation season and shall continue until such time as the Secretary determines, in accordance with the provisions set forth above, that a different rate is applicable. Such a determination shall not be made more frequently than once in any five-year period.

(b) During the development period the power charge under this article shall be included in the development period charges. Thereafter payment of the District's charges for power supply under this article shall be made each calendar year on the basis of annual estimates by the Secretary. The notice of these annual estimates shall contain a statement of the estimated cost of power to be incurred for the calendar year involved. The notice shall be furnished to the District each year on or before February 1 of the calendar year for which it is to be applicable, but when requested by the District, a preliminary estimate shall be given at such earlier date as is agreed on in writing. The District shall pay the amount stated in the notice on or before April 1 of the year for which it is issued, or such other date as may be agreed on in writing. Whenever in the opinion of the Secretary funds so advanced will be inadequate to pay the actual costs being incurred for a power supply under this article, he may give a supplemental power charge notice stating therein the amount of the additional funds required, and the District shall advance that

additional amount on or before the date specified in the supplemental notice. If the funds advanced by the District under this article exceed the District's actual power charges under the provisions of this article for the year for which advanced, the surplus shall be credited to the power charges to become due from the District for succeeding years.

Keeping Project Works in Repair; Inspection

15. (a) The District shall promptly make any and all repairs to the project works for the proper care, operation and maintenance of the project works. No substantial change in any of the project works shall be made by the District without first obtaining the written consent of the Secretary.

(b) The Secretary may cause to be made, from time to time, a reasonable inspection of the project works to ascertain that the terms of this contract are being met by the District.

Reserve and Replacement Fund

16. (a) The District shall establish a fund for reserve and replacement purposes, which fund shall be maintained by the District apart from other District funds in a depository meeting the requirements of the laws of the State of Oregon as to the disposition of irrigation district funds or may be invested in United States bonds.

(b) Beginning with the first year after the end of the development period, the District shall make levies and assessments necessary to accumulate and maintain the reserve fund to be available for the purpose of emergency repairs and extraordinary maintenance of the project works,

including the replacement of major facilities and equipment. The reserve fund shall be accumulated and maintained in an amount of at least one hundred thousand dollars ($100,000) at the rate of five thousand four hundred dollars ($5,400) annually during the first fifteen (15) years and thereafter at a rate of not less than two thousand five hundred dollars ($2,500) annually. Withdrawals from the fund for any of the purposes above set out may be made upon such terms and conditions as to use as shall be prescribed by the Board of Directors of the District. Should the fund be reduced to an amount less than fifty thousand dollars ($50,000), the provisions for restoration of the fund shall include an annual replacement amount of not less than ten thousand dollars ($10,000).

District Irrigable Area

17. All the lands of the District have been classified by the Secretary as irrigable or nonirrigable as shown on the Land Classification Maps now on file in the offices of the District and the Regional Director. From time to time before the close of the development period, upon the request of the District, lands may be reclassified by the Secretary under standards consistent with those used in making the original classification. The District's final irrigable acreage, estimated to be approximately 5,420

acres shall be selected from the arable lands and fixed prior to the end of the development period upon the completion of an irrigable area survey. The District, with the approval of the Secretary and the landowners involved, may for the purposes of adjustment and matters of its own internal administration make changes in the irrigable acreage from time to time so long as such changes do not result in there being a total irrigable area which will exceed the final irrigable area as determined by the irrigable area survey. Nothing in this article shall be deemed to relieve the District in any way of its general obligation to pay the United States the full amount of the District's construction charge obligation under this contract.

Statement of Costs

18. (a) Upon the completion of the work provided for in article 8, or the termination of the work thereon as determined by the Secretary for any reason, the Secretary shall furnish the District with a written statement of the actual cost of construction of the project works and the amount allocated to irrigation for repayment by the District.

(b) The costs which make up the various obligations to be paid by the District to the United States under this contract shall embrace all expenditures of whatsoever nature or kind in relation to the function for which the charge is made, including, but without limitation by reason of this enumeration, cost of surveys and investigations, labor, property, material and equipment, engineering, legal work, superintendence, administration, overhead, general inspection services, and damage claims of all

kinds, whether or not involving the negligence of officers, agents or employees of the United States. The Secretary's determination as to what cost is properly chargeable under this contract, and the classification of those charges for repayment purposes, shall be conclusive.

Default; Assumption of Control of Project Works by the United States

19. (a) Should the District default in any manner in the performance of this contract, and should it fail to correct the default within sixty (60) days after request in writing by the Secretary so to do, the United States may take over the operation and maintenance of all or any part of the project works. Such operation and maintenance by the United States shall continue until the Secretary determines that the District is again capable of operating and maintaining all or any part of the project works then being operated and maintained by the United States and that all or a part of those works should be returned to the District for operation and maintenance. When such a determination is made, written notice thereof, together with the effective date of the return, shall be given to the District; and the District shall accept the operation and maintenance of the portion of the project works thus returned on the effective date and shall thereafter operate and maintain those works in accordance with this contract.

(b) During any time any of the project works are operated and maintained by the United States, the cost of operation and maintenance shall be paid annually in advance by the District to the United States.

Such payments shall be on the basis of annual estimates made by the Secretary. Such estimates shall contain a statement of the estimated cost of operation and maintenance of the project works to be incurred by the United States in the following calendar year. The notice of the estimates shall be furnished to the District on or before September 1 of the calendar year preceding the one for which the notice is issued. When the United States takes over initially the operation and maintenance of any part of the transferred works, the Secretary shall give the District immediately:

(1) a notice of the estimated amount of such charge from the time the United States started operating and maintaining the works to the end of that calendar year; and

(2) a notice to cover the following year when the initial taking over occurs after September 1 of any year.

(c) The District shall pay the amount set out in any such notice to be paid by the District on or before the date or dates fixed by the Secretary, and shall without delay assess whatever special assessments or charges that are necessary to raise the funds for payment of such amounts.

(d) Whenever in the opinion of the Secretary funds so advanced will be inadequate to operate and maintain the works being operated by the United States, he may give a supplemental notice stating therein the amount

of the additional funds required, and the District shall advance that amount on or before the date specified in the supplemental notice. If funds advanced by the District under this article exceed the actual cost of operation and maintenance for such works for the year for which advanced, the surplus shall be credited on any amounts theretofore due or thereafter to become due from the District.

Penalty for Delinquency in Payment

20. Every installment, payment or charge required to be paid to the United States under this contract and which remains unpaid after it shall become due and payable shall be subject to, and the District shall pay, a penalty at the rate of one-half percent (1/2%) per month from the date of delinquency.

Refusal to Deliver Water in Case of Default

21. (a) No water from the project water supply shall be delivered to or for the District if the District is in arrears more than twelve (12) months in the payment to the United States of any installment due on account of the District's construction charge obligation, or is in arrears in the advance payment to the United States of operation, maintenance, or water rental charges.

(b) No water shall be delivered to any lands or parties in the District as to which payments due on account of the District's construction charge obligation to the District or the United States are in arrears more than twelve (12) months, or as to which advance payments for operation and maintenance or water rental charges to the District or the United States are in arrears.

(c) The Secretary may enter on the project works to shut off water being delivered in violation of this article or article 13.

General Obligations - Assessments

22. (a) All the project irrigable lands shall be obligated through the District to pay to the United States the full amount of the construction charge obligation to be paid by the District, as provided in article 9 of this contract, regardless of delinquencies as to particular lands in payment to the District of assessments and charges.

(b) The District shall cause to be levied and collected all necessary assessments and charges, and will use all of its authority and resources to make all payments to the United States when due and to meet its other obligations under this contract.

(c) Should the District be in default at any time in the payment of construction charge installments, the Secretary, by written notice to the District, may require the District to levy toll charges for the collection of its construction charge installments from water users in advance of water delivery, and also establish a toll charge to be paid in advance of water delivery in addition to, or in the place of, any toll charges levied by the District.

All Benefits Conditioned Upon Payment

23. (a) Should the District fail to levy the assessments, tolls, or other charges against any project lands required to be levied to meet the District's obligation to the United States under this contract, or, having

levied, should the District be prevented from collecting such assessments, tolls, or other charges by any judicial proceedings, or otherwise fail to collect them, such lands shall not be entitled to receive water from the project supply, and the District, except as otherwise ordered by a court of competent jurisdiction, shall not deliver water to such lands from the project water supply unless and until arrangements for its delivery satisfactory to the Secretary have been made.

(b) As to any such lands the District is hereby authorized, as a fiscal agent of the United States, to collect whatever charges may be required under the delivery arrangements made as provided in this article. Payment shall be required as a condition precedent to the delivery of water. Collections so made by the District shall be paid promptly to the United States in the manner directed by the Secretary.

(c) No action taken by the Secretary under the provisions of this article shall in any manner relieve the District of the obligations assumed by it under this contract.

<u>Excess Lands</u>

24. As used herein the term "excess land" means that part of the irrigable land within the District in excess of 160 acres held in the beneficial ownership of any single person; or in excess of 320 acres held in the beneficial ownership of husband and wife jointly, as tenants in common or by the entirety, or as community property. The term "large landowner" means an owner of excess lands as herein defined; the term "nonexcess land" means all land within the District which is not excess land as defined herein. Until one-half of the construction charges

allocated against any excess lands have been fully paid, no sale of any such lands shall carry the right to receive water hereunder, unless and until the purchase price involved in such sale is approved by the Secretary and upon proof of fraudulent representation as to the true consideration involved in such sales the Secretary may instruct the District by written notice to refuse to deliver any water subject to this contract to the lands involved in such fraudulent sales and the District shall thereafter take such steps as may be necessary to insure that said water is not delivered to such lands.

Lands Not to Receive Water Until Owners Thereof Execute Certain Contracts

25. (a) Except as permitted by the Act of July 11, 1956 (70 Stat. 524) or the Act of September 2, 1960 (74 Stat. 732), no water shall be delivered to any excess lands as defined in article 24 hereof unless the owners thereof shall have executed valid recordable contracts in form satisfactory to the Secretary, agreeing to the provisions of this article and articles 24 and 26 hereof, agreeing to the appraisal provided for in article 26 hereof and that such appraisal shall be made on the basis of the actual bona fide value of such lands at the date of the appraisal without reference to the construction of the project, and agreeing to the sale of such lands under terms and conditions satisfactory to the Secretary and at prices not to exceed those fixed, all as hereinafter provided.

(b) Each large landowner as condition precedent to the right to receive water delivered hereunder for any of his excess lands shall, within ten (10) years following the announcement of initial availability of water

to the District under this contract, and before any water is delivered by the District to his excess land, execute a valid recordable contract in form satisfactory to the Secretary: Provided, That no excess land may be made eligible to receive water hereunder by the execution of a recordable contract unless such excess land was, on the date of execution of this contract, held in the ownership of the large landowner executing such recordable contract. In such recordable contract the large landowner shall agree to the provisions contained in this article and in articles 24 and 26 hereof and agree to dispose of his excess lands in accordance therewith to persons who can take title thereto as nonexcess land as herein provided and at a price not to exceed the approved, appraised value of such excess land within the period of ten (10) years after the said initial availability of water, and shall agree further that if said land is not so disposed of within said period of ten (10) years the Secretary shall have the power to dispose of said land subject to the same conditions on behalf of such large landowner; and the District agrees that it will take all necessary steps to insure that water is not delivered to any large landowner other than for his nonexcess lands until such owner meets the conditions precedent herein stated.

(c) Each large landowner as a condition precedent to the right to receive water delivered by the District for any of his lands shall, within thirty (30) days after the date of notice from the United States through the District requesting such large landowner to designate his

lands within the area served by said District which he desires to designate as nonexcess lands, file in the office of the District, in duplicate, one copy thereof to be furnished by the District to the Secretary, his written designation and description of lands so selected to be nonexcess lands and upon failure to do so the District shall be required to make such designation and mail a notice thereof to such large landowner, and in the event said District fails to act within such period of time as the Secretary considers reasonable, such designation will be made by the Secretary who will mail a notice thereof to the District and to the large landowner. The large landowner shall become bound by any such action on the part of the District or the Secretary, and the District will take all necessary steps to insure that water is delivered to lands eligible as nonexcess lands only when so designated as nonexcess. A large landowner may with the consent of the Secretary designate land other than that previously designated as nonexcess land: Provided, That such redesignation may be made only by a large landowner who had theretofore executed a recordable contract under the terms hereof, only with respect to land covered by such recordable contract, and only to the extent that an equal acreage of the irrigable land initially designated as nonexcess and owned by such large landowner shall, upon such new designation, become excess land subject to the provisions of such recordable contract in the same manner as if such land had been included therein.

Valuation and Sale of Excess Lands

26. (a) The value of the excess lands within the area served by the District held in private ownership of large landowners as defined in article 24, for the purposes of this contract, shall be determined, subject to the approval thereof by the Secretary, by three appraisers. One of said appraisers shall be designated by the Secretary and one shall be designated by the District and the two appraisers so appointed shall name the third. If the appraisers so designated by the Secretary and the District are unable to agree upon the appointment of the third, the Presiding Judge of the United States District Court for the State of Oregon shall be requested to name the third appraiser.

(b) The following principles shall govern the appraisal:

(1) No value shall be given such lands on account of the existing or prospective possibility of securing water from the project.

(2) In any such appraisal appropriate consideration shall be given to land value indices for comparable lands as published by an authorized agency of the United States.

(3) The value of improvements on the land at the time of said appraisal shall be included therein, but shall also be set forth separately in such appraisal.

(c) The excess land of any large landowner shall be reappraised at the instance of the United States or at the request of said landowner. The cost of the first appraisal and each subsequent appraisal requested by the United States shall be paid by the United States.

(d) Any improvements made or placed on the appraised land after the appraisal hereinabove provided for prior to sale of the land by a large landowner may be appraised in like manner.

(e) Future sales of excess irrigable lands of large landowners within the area served by the District shall not carry the right to receive water hereunder for such land and the District agrees to refuse to deliver water to land so sold until, in addition in compliance with the other provisions hereof, a verified statement showing the sale price upon any such sale shall have been filed with the District.

(f) The District shall take all reasonable steps requested by the Secretary to ascertain the occurrence and conditions of all sales of irrigable lands of large landowners in the area served by the District and to inform the Secretary concerning the same.

(g) A true copy of this contract and of each appraisal made pursuant thereto shall be maintained on file in the office of the District and like copies in the office of the Secretary, and shall be made available for examination during the usual office hours by all persons who may be interested therein.

Water Rights

27. The District shall take such steps as may be deemed necessary by the Secretary to perfect its present water rights and to keep the same in good standing. The District shall provide to the United States authenticated copies of the existing water permits and applications of the District made to or pending before the State of Oregon, and shall also provide to the United States, in advance, copies of all additional documents proposed to be filed from time to time to perfect or supplement those documents.

Protection of Water Supply

28. (a) In case a dispute arises as to the character, extent, priority or validity of the right of the United States or the District to use the portion of the water supply made available to the District under this contract, the District shall promptly bring and diligently prosecute judicial proceedings for the determination of such dispute and shall take all other measures necessary toward the defense and protection of the water supply, either independently or in cooperation with the United States, if the Secretary, in his discretion, determines that such proceedings or other measures are desirable. Nothing in this article, however, shall be construed as precluding the United States, independently or in cooperation with the District, from taking such action as the Secretary deems necessary to protect the water supply.

(b) The District, during the term of this contract and subject to the fulfillment of all its obligation hereunder, shall have a right to its share of the water supply for beneficial use on the project lands superior to any other contract of the United States for such share of the water supply and, upon completion of payment of the District's construction charge obligation, such right shall become permanent subject to the payment of the District's operation and maintenance obligations under the provisions of this contract.

United States Not Liable for Water Shortage or Interruptions

29. No liability shall accrue against the United States or the District or any of their officers, agents or employees for damage, direct or indirect, arising by reason of shortages in the quantity of water available through the project works or interruptions in water deliveries to lands in the District service area resulting from drought, inaccuracy in distribution, hostile diversion, prior or superior claims, accident to or failure of facilities of the project works, whether or not attributable to negligence of officers, agents or employees of the United States or the District, or other causes of whatsoever kind. Nor shall the District's obligations to the United States under this contract be reduced by reason of such shortages or interruptions.

Title to Project Works

30. Title to works built or to be built by the United States shall remain in the United States until otherwise provided by the Congress.

right at any time during office hours to make copies thereof. Subject to applicable state laws and regulations, the proper representative of the United States shall have similar rights in respect to the account books and records of the District.

Crop Returns and Census

33. (a) The District shall keep an accurate record of all crops produced on lands within the District. The District shall furnish the United States each year on or before December 31 a report covering such crops.

(b) If the annual installments are adjusted under the provisions of article 10, using crop returns, at such times as the Secretary deems it necessary or desirable, but only after first consulting with the District, he may cause a crop census to be taken and an investigation of the per-acre income to be made on all or any part of the lands in the District. Such a census and investigation shall be for the purpose of checking the crop reports furnished to the United States by the District and furnishing an independent source of information as to the agricultural income from the lands in the District. In connection with such a census or investigation, the Secretary may require information to be given under oath. In the event any water user refuses to give such information when requested to do so by the Secretary's authorized representative, the representative may estimate the crop production and per-acre income of such water user.

Estimates so made shall be given the same weight as though based on information under oath by the water user in adjusting the annual sum to be paid by the District under this contract.

Inspection and Other Charges to be Paid by the District

34. (a) On or before April 1 of each year, from the effective date of this contract until the District's construction charge obligations to the United States are repaid in full, the following costs for each calendar year, ending on the preceding December 31, shall be paid:

(1) the cost of all inspections under the provisions of article 15;

(2) the cost of any crop census and investigations made under the provisions of article 33; and

(3) other costs for such work as is required to be performed in connection with the administration of this contract by the United States and which is required by the Federal Reclamation Laws to be charged to the District.

(b) To the extent possible, services for which costs are required hereunder to be charged to the District shall be undertaken only after first informing the District of the services involved and their probable costs. The first payment under this article shall be due and payable on April 1 of the year following the first full calendar year

after the effective date of the notice issued pursuant to article 11, and shall cover the calendar year ending the preceding December 31, but the determinations of costs hereunder shall not include items of cost that have accrued and for which the District has made other arrangements for payment or satisfaction.

Regulations and Determinations of Fact

35. (a) The Secretary, after consultation with the District, may, so far as the purport thereof may be consistent with the provisions of this contract, make such regulations and add to and modify them, as are proper and necessary to carry out the true intent and meaning of this contract, and to supply details of its administration.

(b) In the event the District questions any factual determination made by any representative of the Secretary as required in the administration of this contract, any findings of fact on the facts in dispute thereafter made by the Secretary shall be made only after consultation with the District's Board of Directors.

Confirmation of Contract

36. The execution of this contract shall be authorized or ratified by the District in accordance with the procedure of Chapter 545 of Oregon Revised Statutes. The District thereafter and upon the execution of this contract, shall promptly secure a final decree of the proper court of the State of Oregon, establishing judicial determination of the legality of

the procedures in accordance with the provisions of Chapter 548, Oregon Revised Statutes. The District shall furnish to the United States certified copies of such decrees and of all pertinent supporting records.

Changes in District Organization

37. While this contract is in effect, no substantial changes shall be made in the District, either by inclusion or exclusion of lands, by partial or total consolidation or merger, by proceedings to dissolve or otherwise, except with the consent of the Secretary evidenced in writing.

Contract Amendment

38. This contract may be amended at any time by mutual agreement of the parties hereto. If, subsequent to the date of this contract, there are any significant changes in the federal statutes applicable to the project, the Secretary will, upon the request of the District directors, negotiate amendments to this contract in conformance with such changes.

Notices

39. Any notice, demand or request required or authorized by this contract shall be deemed properly given, except where otherwise herein specifically provided, if mailed, postage prepaid, to the Regional Director, Bureau of Reclamation, Boise, Idaho, on behalf of the United States, and to the Secretary, The Dalles Irrigation District, The Dalles, Oregon, on behalf of the District. The designation of the person to be notified or the address of such person may be changed at any time by similar notice.

Discrimination Against Employees or Applicants for Employment Prohibited

40. In connection with the performance of work under this contract, the District, in this article termed the contractor, agrees as follows:

(a) The contractor will not discriminate against any employee or applicant for employment because of race, creed, color, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, creed, color, or national origin. Such action shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

(b) The contractor will, in all solicitations or advertisements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, creed, color, or national origin.

(c) The contractor will send to each labor union or representative of workers with which it has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the said labor union or workers' representative

of the contractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(d) The contractor will comply with all provisions of Executive Order No. 10925 of March 6, 1961, and of the rules, regulations, and relevant orders of the President's Committee on Equal Employment Opportunity created thereby.

(e) The contractor will furnish all information and reports required by Executive Order No. 10925 of March 6, 1961, and by the rules, regulations, and orders of the said Committee, or pursuant thereto, and will permit access to its books, records, and accounts by the contracting agency and the Committee for purposes of investigation to ascertain compliance with such rules, regulations and orders.

(f) In the event of the contractor's noncompliance with the nondiscrimination clauses of this contract or with any of the said rules, regulations, or orders, this contract may be cancelled in whole or in part and the contractor may be declared ineligible for further government contracts in accordance with procedures authorized in Executive Order No. 10925 of March 6, 1961, and such other sanctions may be imposed and remedies invoked as provided in the said Executive Order or by rule, regulation, or order of the President's Committee on Equal Employment Opportunity, or as otherwise provided by law.

(g) The contractor will include the provisions of the foregoing subarticles (a) through (f) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the President's Committee on Equal Employment Opportunity issued pursuant to section 303 of Executive Order No. 10925 of March 6, 1961, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions, including sanctions for noncompliance: Provided, however, That in the event the contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the contractor may request the United States to enter into such litigation to protect the interests of the United States.

Contingent on Appropriations or Allotment of Funds

41. The expenditure of any money or the performance of any work by the United States herein provided for, which may require appropriations of money by the Congress or the allotment of federal funds, shall be contingent on such appropriations or allotments being made. The failure of the Congress to appropriate funds, or the failure of any allotment of funds, shall not, however, relieve the District from any obligations theretofore accrued under this contract nor give the District the right to terminate this contract as to any of its executory features. No liability shall accrue against the United States in case such funds are not so appropriated or allotted.

Assignments Prohibited;
Successors and Assigns Obligated

42. The provisions of this contract shall apply to and bind the successors and assigns of the parties hereto, but no assignment or transfer of this contract, or any part thereof, or interest therein, shall be valid until approved by the Secretary.

Officials Not to Benefit

43. No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit that may arise herefrom, but this restriction shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

IN WITNESS WHEREOF, the parties hereto have signed their names the day and year first above written.

THE UNITED STATES OF AMERICA

By /s/ Harold T. Nelson
Regional Director, Region 1
Bureau of Reclamation
P. O. Box 937, Boise, Idaho

THE DALLES IRRIGATION DISTRICT

By /s/ Don W. Bailey
President

(SEAL)

Attest:

/s/ John R. Thienes
Secretary