PN 460 AUG 23 1989

Mr. Don Dean
Manager
The Dalles Irrigation District
P.O. Box 767
The Dalles OR 97058

Subject: New Irrigation Pumping Power Rate (Power Sales)

Dear Mr. Dean:

The rate which your district pays for irrigation pumping power expires December 31, 1989. We have been involved in negotiations with the Bonneville Power Administration (BPA) to determine the new rate for the period 1990-1994.

Although there may be further negotiations, our agreement with BPA provides that the BPA rate proposal as of August 15, 1989, will go into effect on an interim basis subject to approval by the Secretary of the Interior.

The interim rate is therefore fixed at 1.23 mills per kilowatt-hour, a 23 percent increase over your previous rate of 1.0 mill per kilowatt-hour. This rate is based on the cost of generation at The Dalles Powerplant which now exceeds 1 mill per kilowatt-hour.

We would be happy to meet with the district to answer any questions that you might have. Please advise if such a meeting is desired.

Sincerely,

JOHN W. KEYS III

Regional Director

bc: PN 360, 430, 440

GENERAL

Power Sale

531,

# The Dalles Irrigation District

DON DEAN, Operations Manager
Phone (503) 296-3366
880 S. E. Olney Road

Post Office Box 767
THE DALLES, OREGON 97058

BUREAU OF RECLAMATION OFFICIAL FILE COPY
SEP-8 1989

| TO | INIT | DATE |
|---|---|---|
| 100 | | 9/8 |
| 105 | K | 9/12 |
| 400 | PB | 9/15 |
| 460 | | |
| FILE | | |

September 6, 1989

John W. Keys, III
Regional Director
Bureau of Reclamation
Box 043-550 West Fort Street
Boise, Idaho 83724-0043

Tentative
Meet Oct 12, 1989

Re: Power Rates for The Dalles Project

Dear Mr. Keys:

In reply to your letter of August 23, 1989, I made a phone call to you about a week ago, and talked with your assistant. In this call I requested from your office the basis for the calculations of the cost of power generation from The Dalles Power Plant. I also requested that we have a meeting in this regard as soon as possible.

I assume that your office is aware of the various specific terms of our contract with the Government as to power cost. The cost of generation at The Dalles Power Plant was calculated a few years ago, and information from your office indicated that the cost for generation was 0.52 mills per kilowatt-hour. At our Board of Directors meeting last evening, the Board expressed concern about how that rate could increase 2½ times in about five years. The Dalles Power Plant has not had any significant changes to our knowledge.

Please advise when you could be available for a meeting on this, so that we may understand how that cost has been calculated under your new formula. Also, in your files, would be letters from Harold Nelson, then the Regional Director, to Bill Luce, head of Bonneville Power, regarding this matter. These letters were exchanged in late 1961, following the approval of our contract. Bill Burpee (now retired) then the attorney for the district office of the Bureau, could perhaps clarify this matter.

Yours truly,

Don W Bailey
Don W. Bailey
Chairman of The Board

uh

United States Department of the Interior

BUREAU OF RECLAMATION
PACIFIC NORTHWEST REGION
FEDERAL BUILDING & U.S. COURTHOUSE
BOX 043-550 WEST FORT STREET
BOISE, IDAHO 83724-0043

TAKE PRIDE IN AMERICA

IN REPLY REFER TO:

PN 460

SEP 28 1989

Mr. Don W. Bailey
Chairman of the Board
The Dalles Irrigation District
880 S. E. Olney Road
The Dalles OR 97058

Subject: Cost Data for and Meeting to Discuss New Irrigation Pumping Power Rate (Your letter of September 6, 1989) (Power Sale)

As requested by your subject letter, we are enclosing a copy of a typical statement of power revenues and expenses of the Federal Columbia River Power System, in this case for the latest fiscal year, 1988. This statement shows the typical costs of The Dalles Powerplant which are used in determining the irrigation pumping power rate and were compiled by the Bonneville Power Administration from data supplied by the Corps of Engineers.

As discussed by telephone on September 22, 1989, representatives of the staffs of Reclamation and Bonneville Power Administration will meet with the District at 10:00 a.m. on October 12, 1989, in the District's office to discuss the calculation of the rate.

Sincerely,

Acting Regional Supervisor of
Water, Power and Lands

Enclosure

cc: Mr. Tom Blankenship
District Manager
Bonneville Power Administration
Box 035 - 550 West Fort Street
Boise ID 83724

D0392

Table 2

Federal Columbia River Power System
COMBINING STATEMENT OF COMMERCIAL POWER REVENUES
For the Fiscal Year ended September 30, 1

| | COMBINED | BONNEVILLE POWER ADMIN. | TOTAL FOR GEN. PROJ. | TOTAL FOR BUREAU | BOISE | E BOR | JOHN DAY | LIBBY |
|---|---|---|---|---|---|---|---|---|
| OPERATING REVENUES: | | | | | | | | |
| Sales of electric power: | | | | | | | | |
| Sales within Northwest region: | | | | | | | | |
| *Publicly owned utilities* | $846,347,871 | $846,347,871 | $0 | $0 | $0 | $0 | $0 | $0 |
| Aluminum industry | 692,049,862 | 692,049,862 | 0 | 0 | 0 | 0 | 0 | 0 |
| Privately owned utilities | 181,267,110 | 181,267,110 | 0 | 0 | 0 | 0 | 0 | 0 |
| Federal Agencies | 25,672,156 | 25,672,155 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other industry | 24,614,678 | 24,614,178 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sales outside Northwest region | 51,454,159 | 51,454,159 | | | | 0 | 0 | 0 |
| Total sales of electric power | 1,821,405,836 | 1,821,405,836 | 0 | 0 | 0 | 0 | 0 | 0 |
| Transfers | 0 | (263,953,262) | 263,953,262 | 46,569,589 | 1,344,000 | 46,042 | 21,468,160 | 16,790,370 |
| Other operating revenues: | | | | | | | | |
| Wheeling revenues | 111,457,989 | 111,457,989 | 0 | 0 | 0 | 0 | 0 | 0 |
| *Downstream benefits* | 3,983,682 | 0 | 3,983,682 | 1,178,225 | 0 | 27,957 | 0 | 2,384,000 |
| Other revenues | 10,047,904 | 7,279,332 | 2,768,572 | 2,687,194 | 421,454 | 0 | 0 | 0 |
| Total other operating revenues | 125,489,575 | 118,737,321 | 6,752,254 | 3,865,419 | 421,454 | 27,957 | 0 | 2,384,000 |
| Total sales | 1,946,895,411 | 1,676,189,893 | 270,705,516 | 50,435,008 | 1,765,454 | 173,999 | 21,468,160 | 19,174,370 |
| Residential exchange revenue | 761,737,430 | 761,737,430 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total operating revenues | 2,708,632,841 | 2,437,927,325 | 270,705,516 | 50,435,008 | 1,765,454 | 173,999 | 21,468,160 | 19,174,370 |
| OPERATING EXPENSES: | | | | | | | | |
| Operation | 191,880,103 | 144,868,649 | 47,011,454 | 6,470,507 | 637,864 | 102,189 | 3,295,320 | 1,962,030 |
| Maintenance | 114,023,748 | 70,458,962 | 43,564,786 | 15,393,015 | 1,116,178 | 101,898 | 1,749,029 | 905,194 |
| *Purchase & exchange power* | 850,211,215 | 850,211,215 | 0 | 0 | 0 | 0 | 0 | 0 |
| Conservation costs | 17,586,261 | 17,586,261 | 0 | 0 | 0 | 0 | 0 | 0 |
| Fish & Wildlife costs | 18,781,423 | 18,781,423 | 0 | 0 | 0 | 0 | 0 | 0 |
| Amort. of conservation & Fish & Wildlife | 33,580,800 | 33,580,800 | 0 | 0 | 0 | 0 | 0 | 0 |
| Depreciation | 154,782,470 | 88,448,784 | 66,333,674 | 15,349,319 | 297,727 | 118,410 | 4,003,771 | 4,342,843 |
| | 1,380,846,020 | 1,223,936,094 | 156,909,934 | 37,212,841 | 2,051,769 | 205,497 | 9,048,120 | 7,230,067 |
| Residential exchange expense | 953,975,135 | 953,975,135 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total operating expenses | 2,334,821,163 | 2,177,911,229 | 156,909,934 | 37,212,841 | 2,051,759 | 205,497 | 9,048,120 | 7,230,067 |
| Net operating revenues | 373,811,678 | 260,016,096 | 113,795,582 | 13,222,167 | (285,315) | (31,502) | 12,420,040 | 11,944,303 |
| INTEREST EXPENSE: | | | | | | | | |
| Interest on Federal investment: | | | | | | | | |
| On appropriated funds | 214,011,815 | 56,555,825 | 157,455,990 | 29,321,689 | 275,573 | 301,035 | 11,782,191 | 17,703,398 |
| *On Transmission System Act borrowings* | 163,684,321 | 163,684,321 | 0 | 0 | 0 | 0 | 0 | 0 |
| Allowance for funds used during constdruction | (11,149,080) | (9,334,340) | (1,814,740) | (1,288,416) | (209,575) | (131,581) | 0 | 0 |
| Net interest expense | 368,547,056 | 212,905,806 | 155,641,250 | 28,033,273 | 65,998 | 169,434 | 11,782,191 | 17,703,398 |
| NET REVENUES (EXPENSE) | $5,264,622 | $47,110,290 | ($141,845,668) | ($14,811,106) | ($352,313) | ($199,018) | $637,849 | ($5,759,095) |

| | LITTLE GOOSE | LOOKOUT POINT DEXTER | LOST CREEK | LOWER GRANITE | LOWER MONUMENTAL | McNARY | THE DALLES | ADJUSTMENTS |
|---|---|---|---|---|---|---|---|---|
| OPERATING REVENUES: | | | | | | | | |
| Sales of electric power: | | | | | | | | |
| Sales within Northwest region: | | | | | | | | |
| *Publicly owned utilities* | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Aluminum industry | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Privately owned utilities | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Federal Agencies | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other industry | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sales outside Northwest region | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total sales of electric power | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Transfers | 17,857,389 | 2,346,204 | 1,675,245 | 21,853,668 | 18,177,200 | 13,950,129 | 12,797,194 | 0 |
| Other operating revenues: | | | | | | | | |
| Wheeling revenues | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| *Downstream benefits* | 0 | 10,400 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other revenues | 4,351 | 0 | 0 | 9,618 | 5,397 | 43,474 | 0 | 0 |
| Total other operating revenues | 4,351 | 10,400 | 0 | 9,618 | 5,397 | 43,474 | 0 | 0 |
| Total sales | 17,861,740 | 2,356,804 | 1,675,245 | 21,863,316 | 18,182,597 | 13,993,603 | 12,797,194 | 0 |
| Residential exchange revenue | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total operating revenues | 17,861,740 | 2,356,804 | 1,675,245 | 21,863,316 | 18,182,597 | 13,993,603 | 12,797,194 | 0 |
| OPERATING EXPENSES: | | | | | | | | |
| Operation | 3,472,840 | 806,895 | 624,623 | 4,708,609 | 3,494,142 | 3,406,820 | 2,317,436 | 0 |
| Maintenance | 1,760,360 | 451,243 | 127,490 | 2,362,299 | 2,201,884 | 3,447,934 | 2,890,011 | 0 |
| *Purchase & exchange power* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Conservation costs | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Fish & Wildlife costs | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Amort. of conservation & Fish & Wildlife | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Depreciation | 3,081,925 | 492,764 | 297,007 | 3,645,366 | 3,212,389 | 3,245,631 | 3,459,613 | 0 |
| | 8,315,125 | 1,750,902 | 1,049,120 | 10,716,274 | 8,978,415 | 10,101,385 | 9,067,062 | 0 |
| Residential exchange expense | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total operating expenses | 8,315,125 | 1,750,902 | 1,049,120 | 10,716,274 | 8,978,415 | 10,101,385 | 9,067,062 | 0 |
| Net operating revenues | 9,546,615 | 605,902 | 626,125 | 11,147,042 | 9,204,182 | 3,892,218 | 3,730,132 | 0 |
| INTEREST EXPENSE: | | | | | | | | |
| Interest on Federal investment: | | | | | | | | |
| On appropriated funds | 7,766,495 | 1,096,825 | 929,353 | 10,719,405 | 7,949,596 | 6,432,207 | 7,409,475 | 0 |
| *On Transmission System Act borrowings* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Allowance for funds used during constdruction | (131,581) | 0 | 0 | (131,381) | (131,581) | 0 | 0 | 0 |
| Net interest expense | 7,634,914 | 1,096,825 | 929,353 | 10,587,824 | 7,818,015 | 6,432,207 | 7,409,475 | 0 |
| NET REVENUES (EXPENSE) | $1,911,701 | ($490,923) | ($303,228) | $559,218 | $1,386,167 | ($2,539,989) | ($3,679,343) | $0 |

only generation costs!!

D0394

TO

# The Dalles Irrigation District

DON DEAN, Operations Manager
Phone (503) 296-3366
880 S. E. Olney Road

Post Office Box 767
THE DALLES, OREGON 97058

BUREAU OF RECLAMATION OFFICIAL FILE COPY
OCT - 6 1989

| TO | INIT | DATE | ACTION MADE BY |
|---|---|---|---|
| 460 | TEL | 10/12 | |
| | | | |
| | | | |
| | | | |
| FILE | | | |

October 4, 1989

Meeting in Portland on 10/12 to pass info to TEL

Dept. of Water, Power & Lands
Bureau of Reclamation
Box 043-550 West Fort Street
Boise, Idaho 83724-0043

Attn: PN 460

Sir:

Regarding your letter of September 28, 1989, we appreciate your sending a data sheet of information supplied by Bonneville Power Administration. However, this does not appear to be pertinent to calculating our power cost, since our rate is based only on generation cost at The Dalles Dam.

Please refer to copies of letters exchanged between Regional Director Harold Nelson, Bureau of Reclamation and Charles Luce head of Bonneville Power Administration, in December 1961. Operation & maintenance were specifically excluded in calculating our power cost.

Please supply us with current generation cost at The Dalles Dam, in accordance with terms of our contract with the Dept. of Interior, Bureau of Reclamation dated October 19, 1961.

Sincerely yours,

Don W Bailey

Don W. Bailey, Chairman
Board of Director's

uh

Encls. Copies of H. Nelson & C. Luce's letters

Page 12 of Repayment Contract regarding Power Cost

FEB 15 1990

PN 360

Secretary
The Dalles Irrigation District
P.O. Box 767
The Dalles OR 97058

Subject: Contract No. 14-06-100-2276 (Contract)

District Secretary:

We are issuing this notice of pumping power charges as required by repayment contract No. 14-06-100-2276.

| | | |
|---|---|---|
| Estimated pumping power for calendar year 1990 15,083,000 kWh @ 1.23 mills | $18,552.00 | |
| Less: Credit from operation and maintenance of fish screens | -1,700.00 | |
| Credit from Bonneville Power Administration | -774.00 | |
| Total estimate | | $16,078.00 |
| Actual pumping power for calendar year 1989 17,589,426 kWh @ 1 mill | $17,589.00 | |
| Credit and funds available for calendar year 1989 | 14,951.00 | |
| Plus deficit for calendar year 1989 | | 2,638.00 |
| Due by April 1, 1990 | | $18,716.00 |

If the funds advanced for calendar year 1990 exceed or are less than the actual pumping power charges, the surplus or deficit will be adjusted on the pumping power charge for calendar year 1991.

We have not as yet received the approval of the Secretary of the Interior for the rate of 1.23 mills per kilowatt-hour. In the unlikely event that the Secretary does not approve the rate, your billing will be adjusted accordingly.

Sincerely,

Joel P. Payne

Chief, Finance Branch

PN 430, 460
Whitt:kef 02/14/90
Jerry\14062276

United States Department of the Interior

TAKE PRIDE IN AMERICA

BUREAU OF RECLAMATION
WASHINGTON, D.C. 20240

IN REPLY REFER TO:

SEP 28 1990

D-5140/W-6570

Memorandum

To: Assistant Secretary - Water and Science
Acting

From: Commissioner

Subject: Proposed Exhibit Revisions to Irrigation Pumping Power Rate for Various Projects, Idaho, Oregon, and Washington (Power Sales)

Enclosed are copies of the five proposed exhibit revisions to the following contracts which are between the Bureau of Reclamation (Reclamation) and Bonneville Power Administration (BPA).

Contract No. 14-06-100-2911 (BPA No. 14-03-32210) dated June 6, 1963 - Electric service to the irrigation pumping loads of The Dalles Project

Contract No. 14-06-100-5585 (BPA No. 14-03-63656) dated April 6, 1967 - Electric service to the irrigation pumping loads of the Spokane Valley Project

Contract No. 14-06-100-5999 (BPA No. 14-03-73152) dated September 7, 1967 - Electric service to the irrigation pumping loads of the Crooked River Project

Contract No. 14-06-100-7938 (BPA No. 14-03-17506) dated January 25, 1974 - Electric service to the irrigation pumping loads of the Chief Joseph Dam Project

Contract No. 14-06-100-8070 (BPA No. 14-03-49151) dated August 23, 1974 - Electric service to the irrigation pumping loads of the Tualatin Project, East Greenacres Unit of the Rathdrum Prairie Project, and the Spokane Indian Development and to some of the irrigation pumping loads of the Chief Joseph Dam Project

These are the agreements we have with BPA for service to small projects. Amendments were approved by Assistant Secretary Broadbent on January 9, 1986, which provided for more uniform contract language and established the methodology to be used in the determination of the rates for the 1985-1989 period and for future rates.

One requirement of the agreements is that the rates be reviewed at 5-year intervals. Reclamation and BPA recently completed the first such review and have informed the affected irrigation districts as to their revised rates beginning in 1990 subject to the approval of the Secretary of the Interior.

The new rate determination process worked very smoothly although Reclamation and BPA did identify some minor modifications which were desirable to produce more representative rates.

However, there were significant increases in many of the rates due to the fact that BPA changed from the sinking fund method of depreciation to the straight-line method. This change in the method of depreciation is an internal policy change for BPA and is beyond our control and beyond the scope of these agreements.

The change was made in 1985 and would have resulted in large losses of revenue over the 1986-1989 period and a much larger impact on the 1990 rate had not BPA agreed that, since the apparent losses were the result of an accounting change and not due to the actual expenditure of additional funds, these apparent lost revenues would be ignored in the establishment of the new rates.

Members of the Reclamation and BPA staffs met with many of the irrigation districts at the districts request to explain that, even though the new depreciation method would result in a large increase in current rates, the effect on long-term rates would be very beneficial to the districts.

The rate for the Spokane Valley Project transmission was reduced because BPA had overestimated the costs of operation and maintenance for the 1985-1989 period resulting in a significant overcollection of revenue during that period.

Each exhibit is self-explanatory for the derivation of each proposed rate. Our staff has reviewed each of the exhibits for such derivation and adequacy of the proposed rate and concur with each of the proposed exhibit revisions.

Accordingly, we recommend your approval of the proposed rates for all five exhibits.

Enclosures

Approved:

Assistant Secretary - Water and Science
and returned

11/16/90
Date

cc: Deputy Commissioner, Attention: D-1000
Regional Director, Boise, Idaho, Attention: PN-400

AUTHENTICATED COPY

Revision No. 1
Exhibit B, Page 1 of 4
BPA Contract No. 14-03-32210
USBR Contract No. 14-06-100-2911
Effective at 2400 hours on
December 31, 1989

(This revision updates the calculations for determining the cost charged by Bonneville for U.S. Bureau of Reclamation Reserved Power and Energy at The Dalles for the five year period 1990-1994. The charge for the previous five year period, 1985-1989, was 1.00 mill per kilowatthour.)

CHARGE AND CALCULATIONS

The Dalles Project

CHARGE:

Commencing on December 31, 1989, at 2400 hours, the charge for Reserved Power and Energy shall be 1.23 mills per kilowatthour.

CALCULATIONS:

Summary:

| | |
|---|---|
| Generation Cost for 1990 | 1.160 mills per kilowatthour |
| Lost Revenue Component | 0.067 mills per kilowatthour |
| Total Unit Cost | 1.227 mills per kilowatthour |

Total unit cost, to nearest hundredth mill 1.23 mills per kilowatthour

Conceptual Overview (Explanation of the Calculation Detail):

The charge for power purchased under this contract remains fixed for a five year period. To determine the charge for the next five year period, the historical cost of providing power is first determined. That historical cost needs to be increased to compensate BPA for increases in cost that will occur over those next five years. In addition, since it is not possible to forecast increases in cost precisely, the charge will also need to be adjusted for forecasting errors from the previous five year period; i.e., the charge will be decreased if BPA overcollected in the last period or increased if BPA undercollected.

The method used to adjust the historical costs is called the "Lost Revenue Component Method". This method provides a means by which the financial interests of both parties are protected. The term "lost revenue" refers to something different for each five year period: for the previous period, the lost revenue represents the difference between the actual cost of service and the revenue collected from the charge in effect for that period. For the upcoming five year period, the term "lost revenue" refers to the project inflation (i.e., the difference between the historical cost of service and the projected cost of service in a given year).

Conceptual Overview (Continued)

Once the lost revenue for each year has been calculated, its effect on the historical cost can be determined. The "Lost Revenue Component Method" is used to determine the annual cost of the lost revenue. It is a more accurate way of figuring the amount which should be charged than the more straightforward method of simply dividing the total lost revenue by the the number of years in the charge period. To implement the "Lost Revenue Component Method", the actual long-term interest rate for each of the past five years and the project cost for the next five years is determined. That cost is applied to the lost revenue to get a "lost revenue plus interest" figure for each of the five past and five upcoming years. That total is then discounted to get an annual cost. The cost which is charged is equal to the historical cost plus the annual cost of the lost revenue.

In general, the charge under this Agreement will be greater than the cost of providing service in the first few years and less than the cost of service in the later years. On average, however, the rate should closely approximate the actual cost of service.

Calculation Detail:

Generation:

The generation charge for power purchased pursuant to this Agreement shall be the greater of:

1. one (1) mill per kilowatthour, or
2. actual generation costs, excluding interest.

Actual historical generation costs in thousands of dollars at The Dalles for the three previous fiscal years, FY 1986, 1987, and 1988, were taken from BPA's Summary Financial Data Tables 6 and 10a.

| Fiscal Year | Cost of O & M | Annual Depreciation | Total Cost | Sales (1000 MWH) | Cost in mills/KWh |
|---|---|---|---|---|---|
| 1985 | $4,271 | $3,595 | $7,866 | 8,047 | 0.978 |
| 1986 | $4,955 | $3,598 | $8,553 | 8,145 | 1.050 |
| 1987 | $4,970 | $3,646 | $8,616 | 7,614 | 1.132 |
| 1988 | $5,408 | $3,660 | $9,068 | 6,986 | 1.298 |

Generation cost (average of three most recent years) 1.160

The average cost of generation is greater than one mill per kilowatthour, the charge for 1990-94 shall be 1.160 mills per kilowatthour.

Revision No. 1
Exhibit B, Page 3 of 4
BPA Contract No. 14-03-32210
USBR Contract No. 14-06-100-2911
Effective at 2400 hours on
December 31, 1989

Lost Revenue Component for 1985-94:

| Year | Long Term Discount Rate (%) | Discount Rate Factor 1/ | Lost Revenue 1985-95 2/ | Lost Rev & Int 1985-95 |
|---|---|---|---|---|
| 1985 | 12.375 | 2.454 | $ 0 | $ 0 |
| 1986 | 11.375 | 2.193 | $ 0 | $ 0 |
| 1987 | 8.875 | 1.991 | $ 0 | $ 0 |
| 1988 | 8.500 | 1.831 | $ 0 | $ 0 |
| 1989 | 9.250 | 1.682 | $ 0 | $ 0 |
| 1990 | 9.660 | 1.537 | $ 397 | $ 610 |
| 1991 | 10.040 | 1.399 | $ 812 | $ 1,136 |
| 1992 | 10.320 | 1.270 | $ 1,226 | $ 1,557 |
| 1993 | 10.030 | 1.153 | $ 1,658 | $ 1,912 |
| 1994 | 9.770 | 1.049 | $ 2,090 | $ 2,192 |
| TOTAL | -- | 6.408 3/ | $ 6,183 | $ 7,407 |

1/ The Discount Rate Factor is based on interest from mid-year of the year under consideration through December 31, 1994. To get the factor, the interest rate for the year under consideration is halved, expressed as a decimal, and added to one. That "half rate" is then multiplied by one plus the interest rate (expressed as a decimal) for each succeeding year through 1994 to get the Discount Rate Factor for the year. The factor expresses the value of lost revenue and interest to Bonneville resulting from underrecovery of actual project costs.

2/ Lost revenue results in part from a rate designed to recover Bonneville's costs in 1988 being applied to the entire 1990-94 rate period and in part from revenue over/underrecoveries since 1985. Actual over/underrecoveries are calculated by subtracting revenues received under the 1985 rate from actual costs for the period 1986-1989. Since the lost revenue component was not applicable for the 1985-89 period, the component is assumed to include only expected revenue shortfalls for the 1990-94 period.

Unit generation costs at The Dalles (in real terms) were assumed to increase by 2% per year for the period 1990-94. This estimate, when multiplied by the expected USBR usage under this Agreement, yields expected total costs. Lost revenue is calculated by subtracting expected revenue at 1.160 mills per kilowatthour from expected costs.

Revision No. 1
Exhibit D, Page 4 of 4
BPA Contract No. 14-03-32210
USBR Contract No. 14-066-100-2911
Effective at 2400 hours on
December 31, 1989

3/ Total Discount Rate Factor is the total only for the years 1990-94. This total is used since the lost revenue will be collected over the period 1990 through 1994.

Annual Dollar Lost Revenue Component: $1,156

The Annual Dollar Lost Revenue Component must be calculated by summing the annual amount of lost revenue plus interest for both the 1985-89 and the 1990-94 periods, and dividing the result by the sum of the Discount Rate Factors for the 1990-94 period. ($7,407 / 6.408) = $ 1,156

Annual Unit Lost Revenue Component: 0.067 mills per kWh

The lost revenue component in mills per kilowatthour (kWh) is equal to the Annual Dollar Lost Revenue Component divided by the expected USBR energy sales in each fiscal years 1990-94., ($1,156 / 17,271 mWh).

UNITED STATES OF AMERICA
Department of Energy
Bonneville Power Administration

/s/ Edward W. Sienkiewicz

By Edward W. Sienkiewicz
Senior Assistant Administrator for Power Management

JAN 10 1991

Date JAN 10 1991

ACCEPTED:

UNITED STATES OF AMERICA
Department of the Interior
Bureau of Reclamation

By John W. Keys, III — /s/ John W. Keys III

Title Regional Director — Regional Director

Date December 14, 1990 — December 14, 1990

(VS6-PMCG-4048c)

Revision No. 2
Exhibit B, Page 1 of 4
Contract No. 14-03-32210
USBR Contract No. 14-06-100-2911
Effective at 2400 hours on
December 31, 1994

## CHARGE AND CALCULATIONS
## THE DALLES PROJECT

This revision updates the charge for U.S. Bureau of Reclamation (USBR) Reserved Power and Energy at The Dalles for the period beginning 1995. The charge for the previous 5-year period, 1990-1994, was 1.23 mills per kilowatt-hour (mills/kWh).

1. **CHARGE**
Commencing on December 31, 1994, at 2400 hours, the charge for Reserved Power and Energy shall be 1.31 mills/kWh.

2. **CALCULATIONS**

(a) **Summary**

| | | |
|---|---|---|
| Generation Cost | 1.226 | mills/kWh |
| Lost Revenue Component | .086 | mills/kWh |
| Total Unit Cost | 1.312 | mills/kWh |
| Total unit cost, to nearest hundredth mill | 1.31 | mills/kWh |

(b) **Conceptual Overview (Explanation of the Calculation Detail)**
The charge for power purchased under this contract remains fixed until the next revision in accordance with the Agreement. To determine the charge for the next period, the historical cost of providing power is first determined. That historical cost needs to be increased to compensate Bonneville for increases in cost that will occur during the next period. In addition, since it is not possible to forecast increases in cost precisely, the charge will also need to be adjusted for forecasting errors from the previous period, i.e.; the charge will be decreased if Bonneville over-collected in the last period or increased if Bonneville under-collected.

The method used to adjust the historical costs is called the "Lost Revenue Component Method." This method provides a means by which the financial interests of both Parties are protected. The term "lost revenue" refers to something different for each period. For the previous period, the lost revenue represents the difference between the actual cost of service and the revenue collected from the charge in effect for that period. For the upcoming period, the term "lost revenue" refers to the projected inflation (i.e., the difference between the historical cost of service and the projected cost of service in a given year).

Revision No. 2
Exhibit B, Page 2 of 4
Contract No. 14-03-32210
USBR Contract No. 14-06-100-2911
Effective at 2400 hours on
December 31, 1994

Once the lost revenue for each year has been calculated, its effect on the historical cost can be determined. The Lost Revenue Component Method is used to determine the annual cost of the lost revenue. It is a more accurate way of figuring the amount which should be charged than simply dividing the total lost revenue by the number of years in the charge period. To implement the Lost Revenue Component Method, the actual long-term interest rates for each year of the past periods and the projected cost for the next period are determined. That cost is applied to the lost revenue to get a "lost revenue plus interest" figure for the past period and upcoming period. That total is then discounted to get an annual cost. The charge is equal to the historical cost plus the annual cost of the lost revenue.

In general, the charge under this Agreement will be greater than the cost of providing service in the first few years and less than the cost of service in the later years; however, the average rate should closely approximate the actual cost of service.

(c) **Calculation Detail**
The generation charge for power purchased pursuant to this Agreement shall be the greater of:

(1) one (1) mill/kWh; or

(2) actual generation costs, excluding interest.

Generation costs in thousands of dollars at The Dalles for the Fiscal Years 1990 through 1993 are from Bonneville's *Summary Financial Data*.

| Fiscal Year | O&M and Depreciation | Generation GWh | Loss Factor | Sales GWh | Mills per kWh |
|---|---|---|---|---|---|
| 1990 | $ 9,851 | 8,456 | 1.0244 | 8,255 | 1.193 |
| 1991 | 7,692 | 9,163 | 1.0239 | 8,949 | 0.860 |
| 1992 | 9,989 | 6,888 | 1.0256 | 6,716 | 1.487 |
| 1993 | 10,093 | 6,990 | 1.0313 | 6,778 | 1.489 |
| | $37,625 | | | 30,698 | |

Generation cost (weighted average): 1.226

The average cost of generation is greater than 1 mill/kWh. The charge for the next period shall be 1.226 mills/kWh.

Revision No. 2
Exhibit B, Page 3 of 4
Contract No. 14-03-32210
USBR Contract No. 14-06-100-2911
Effective at 2400 hours on
December 31, 1994.

(d) **Lost Revenue Component (1990-1999)**

| Year | Long-Term Discount Rate (%) | Discount Rate Factor 1/ | Lost Revenue 1990-1999 2/ | Lost Revenue & Interest 1990-1999 |
|---|---|---|---|---|
| 1990 | 9.25 | 1.994 | $ (648) | $ (1,292) |
| 1991 | 7.73 | 1.837 | (6,734) | (12,370) |
| 1992 | 7.32 | 1.709 | 4,866 | 8,316 |
| 1993 | 7.46 | 1.591 | 4,300 | 6,841 |
| 1994 | 7.13 | 1.483 | 0 | 0 |
| 1995 | 7.44 | 1.382 | 436 | 603 |
| 1996 | 7.27 | 1.288 | 873 | 1,124 |
| 1997 | 7.12 | 1.201 | 1,331 | 1,599 |
| 1998 | 7.47 | 1.120 | 1,789 | 2,004 |
| 1999 | 7.92 | 1.040 | 2,270 | 2,361 |
| Total | | 6.031 3/ | | $ 9,186 |

(e) **Annual Dollar Lost Revenue Component: $1,523**
The Annual Dollar Lost Revenue Component equals the Lost Revenue plus Interest divided by the sum of the Discount Rate Factors for the 1995-1999 period: $9,186/6.031.

---

1/ The Discount Rate Factor is based on interest from mid-year of the year under consideration through December 31, 1999. To get the factor, the interest rate for the year under consideration is halved, expressed as a decimal, and added to one (1). That "half rate" is then multiplied by one (1) plus the interest rate (expressed as a decimal) for each succeeding year through 1999 to get the Discount Rate Factor for the year. The factor expresses the value of lost revenue and interest to Bonneville resulting from under-recovery of actual project costs.

2/ Lost revenue results from applying a charge designed to recover Bonneville's costs in 1994 to the entire 1995-1999 period and from revenue over/under-recoveries since 1989. Because any lost revenue for 1994 is not known until after 1994, it will be included in the lost revenue for the next period. Unit generation costs at The Dalles (in real terms) are assumed to increase by 2 percent per year for the period 1995-1999. This estimate, when multiplied by the estimated sales under this Agreement, yields expected total costs. Lost revenue is calculated by subtracting expected revenue at 1.226 mills/kWh from expected costs.

3/ Total Discount Rate Factor is the total only for the years 1995-1999. This total is used since the lost revenue will be collected over the period 1995 through 1999.

Revision No. 2
Exhibit B, Page 4 of 4
Contract No. 14-03-32210
USBR Contract No. 14-06-100-2911
Effective at 2400 hours on
December 31, 1994

(f) **Annual Unit Lost Revenue Component: .086 mills/kWh**
The Lost Revenue Component in mills/kWh equals the Annual Dollar Lost Revenue Component divided by the estimated energy sales: $1,523/17,800 MWh.

UNITED STATES OF AMERICA
Department of Energy
Bonneville Power Administration

By [signature]
Vice President for
Generation Supply

Name Judith A. Johansen
*(Print/Type)*

Date July 7, 1996

UNITED STATES OF AMERICA
Department of the Interior
Bureau of Reclamation

By [signature]

Name Kenneth R. Pedde
*(Print/Type)*

Title Deputy Regional Director

Date July 7, 1996

(PMLAN-MPSM-W:\MPSM\CT\LTRAGT\32210_B2.DOC)

D-5400

MAY 15 1995

D-5400
PRJ-1.00

MEMORANDUM

To: Director, Program Analysis
Attention: W-5000

From: Manager, Power Resources Office

Subject: Proposed Amendments to Various Contracts with the Bonneville Power Administration

The Pacific Northwest Region (PN) has five contracts with the Bonneville Power Administration (BPA), under which BPA supplies reserved or supplemental power and energy for irrigation pumping at various projects in PN.

Each of the contracts has a provision which requires the rate be adjusted every five years by the use of a specified formula. The previous five-year period ended December 31, 1994, and BPA provided the proposed new rates by the specified July 15 deadline. Because of staff reductions and reorganizations, Bonneville has proposed to change the adjustment provision to require adjustment not more often than every five years.

We agree with the PN's finding that this is acceptable, as originally the five-year requirement was established due to BPA's desire to keep the rates as current as possible while Reclamation's constraint was that some of our repayment contracts with the irrigation districts allowed them to be adjusted not more often that every five years.

No change is proposed in the methodology for determining the rates.

PN's transmittal letter and two copies of each of the following proposed amendments are attached:

| | USBR CONTRACT NO. | AMENDMENT NO. |
|---|---|---|
| The Dalles | 14-06-100-2911 | 2 |
| Spokane Valley | 14-06-100-5585 | 2 |
| Crooked River | 14-06-100-5999 | 2 |
| Chief Joseph | 14-06-100-7938 | 4 |
| PN Region | 14-06-100-8070 | 5 |

We concur with PN that it is not necessary to obtain the approval of the Secretary of the Interior (Secretary) for execution of these proposed amendments, as only minor changes in the rate review requirements are involved and there will be no cost to the Government.

Secretary approval for the proposed new rates appears to be necessary even though they have been calculated by the methodology previously approved by the Secretary. PN has informed the irrigation districts that the proposed rates have been implemented on an interim basis pending the Secretary's approval.

Please coordinate obtaining the necessary approvals from the Secretary.

If you have any questions, contact Al Bolin at (208) 378-5294 or Dennis Sloan at (303) 236-1061, extension 250.

M. J. Robt.

Attachments

cc: Regional Director, Boise ID, Attention: PN-3200 (Bolin)
(w/o att)

bc: D-5000, D-5400
(w/o att)

WBR:JDSloan:djg:4/5/95:236-1061/250
(P:\current\5400\sloan\bpacontr.WP)

FORM 8-27
USBR, PN REG
REV. 5/81

United States
Department of the Interior
BUREAU OF RECLAMATION
PACIFIC NORTHWEST REGIONAL OFFICE

Various
(Project or office)

# RECORD OF EXECUTION OF CONTRACT

Contractor: Bonneville Power Administration
Contract No. Various Date of contract Various
Estimated amount involved $ No cost to the Government
Purpose: These MOUs provide for the service of irrigation pumping power and energy to five different projects.

Remarks: The proposed amendments update the charges for the power and energy supplied and relax the requirement for updating every five years.

Place Boise, Idaho Date

1. Contract transmitted to Field Solicitor for legal approval.

Regional Supervisor of Water, Power and Lands
(Title)

Place Boise, Idaho Date

2. Contract given legal approval.

See attached E-mail dated May 13, 1996, from Hendrick Willems.

Field Solicitor

3. Contract executed and transmitted to the following:

Original contract Regional Director, Boise ID Attn: PN-1820
Duplicate original to contractor
Copy to: Commissioner, Washington DC Attention: W-5000 (10 copies)
Manager, Power Resources Office, Denver CO Attention: D-5400 (2 copies)
Field Solicitor, Boise ID (1 copy)
Regional Files (1 copy)

**From:** Hendrik Willems
**To:** ibr1dm10.1pn11001.CBOLIN, 867f6.JSLOAN
**Date:** May 13, 1996 12:26pm
**Subject:** Proposed Amendments to BPA Contracts - Power Rates

Whoops - I think this is one that kind of fell between some cracks back here - my apologies. You folks sent us a memo dated May 15, 1995 and one dated November 9, 1995, both of which indicated you thought the Secretary of the Interior needed to approve the new rates for contracts with BPA..

Aaron Watkins (on my staff at the time but now working elsewhere) worked with the Solicitor's Office on answering the question of whether or not secretarial approval was really needed. He indicated to me that Duane Meacham in the Solicitor's Office had concluded that since the Secretary had already approved the methodology for calculating the rates, no further approval was necessary. Those conclusions were presented verbally, we have nothing in writing.

So, my question to you folks at this time is basically what do we do next? Do you feel you need a memo from the Commissioner stating that the rates are okay and do not need Secretarial approval? If so, we can put that together, it will need the Solicitor's Office surname, and get it out to you, but it will likely take some time to get the Sol's Office to sign off on it. Or, since the Regional Director has the delegated authority to sign the contract amendments, D -5000 is okay with them, and no approval is needed from the Secretary, do you need anything official in writing from the Commissioner?

Let me know what you need and we will expedite any further action.

Henk

**CC:** 867f6.MROLUTI

Vern Perry

Revision No. 3
Exhibit B, Page 1 of 4
Contract No. 14-03-32210
USBR Contract No. 14-06-100-2911
Effective at 2400 hours on
December 31, 2001

## CHARGE AND CALCULATIONS
## THE DALLES PROJECT

ıe charge for U.S. Bureau of Reclamation (USBR) Reserved Power and Energy at The Dalles for the period beginning 2002. The charge for the previous period, 1995-2001, was 1.31 mills per kilowatt-hour (mills/kWh).

1. **CHARGE**
Commencing on December 31, 2001, at 2400 hours, the charge for Reserved Power and Energy shall be 2.59 mills/kWh.

2. **CALCULATIONS**

(a) **Summary**

| | | |
|---|---|---|
| Generation Cost | 1.846 | mills/kWh |
| Lost Revenue Component | .748 | mills/kWh |
| Total Unit Cost | 2.594 | mills/kWh |
| Total unit cost, to nearest hundredth mill | 2.59 | mills/kWh |

(b) **Conceptual Overview (Explanation of the Calculation Detail)**
The charge for power purchased under this contract remains fixed until the next revision in accordance with the Agreement. To determine the charge for the next period, the historical cost of providing power is first determined. That historical cost needs to be increased to compensate Bonneville for increases in cost that will occur during the next period. In addition, since it is not possible to forecast increases in cost precisely, the charge will also need to be adjusted for forecasting errors from the previous period, i.e.; the charge will be decreased if Bonneville over-collected in the last period or increased if Bonneville under-collected.

The method used to adjust the historical costs is called the "Lost Revenue Component Method." This method provides a means by which the financial interests of both Parties are protected. The term "lost revenue" refers to something different for each period. For the previous period, the lost revenue represents the difference between the actual cost of service and the revenue collected from the charge in effect for that period. For the upcoming period, the

term "lost revenue" refers to the projected inflation (i.e., the difference between the historical cost of service and the projected cost of service in a given year). Once the lost revenue for each year has been calculated, its effect on the historical cost can be determined. The Lost Revenue Component Method is used to determine the annual cost of the lost revenue. It is a more accurate way of figuring the amount which should be charged than simply dividing the total lost revenue by the number of years in the charge period. To implement the Lost Revenue Component Method, the actual long-term interest rates for each year of the past periods and the projected cost for the next period are determined. That cost is applied to the lost revenue to get a "lost revenue plus interest" figure for the past period and upcoming period. That total is then discounted to get an annual cost. The charge is equal to the historical cost plus the annual cost of the lost revenue.

In general, the charge under this Agreement will be greater than the cost of providing service in the first few years and less than the cost of service in the later years; however, the average rate should closely approximate the actual cost of service.

(c) **Calculation Detail**

The generation charge for power purchased pursuant to this Agreement shall be the greater of:

(1) one (1) mill/kWh; or

(2) actual generation costs, excluding interest.

Generation costs in thousands of dollars at The Dalles for the Fiscal Years 1994 through 2000 are from Bonneville's *Summary Financial Data*.

| Fiscal Year | O&M and Depreciation | Generation GWh | Mills /kWh |
|---|---|---|---|
| 1994 | $11,832 | 6,102 | 1.939 |
| 1995 | 13,184 | 5,930 | 2.223 |
| 1996 | 13,263 | 7,407 | 1.791 |
| 1997 | 13,288 | 7,876 | 1.687 |
| 1998 | 13,630 | 7,374 | 1.848 |
| 1999 | 15,459 | 7,861 | 1.967 |
| 2000 | 14,682 | 7,579 | 1.937 |
| Weighted Average FY96-00 | | | 1.846 |

The average cost of generation is greater than 1 mill/kWh. The charge for the next period shall be 1.846 mills/kWh.

Revision No. 3
Exhibit B, Page 3 of 4
Contract No. 14-03-32210
USBR Contract No. 14-06-100-2911
Effective at 2400 hours on
December 31, 2001

(d) **Lost Revenue Component (1994-2006)**

| Year | Discount Rate (%) | Discount Rate Factor 1/ | Lost Revenue 1994-2006 2/ | Lost Revenue & Interest 1994-2006 |
|---|---|---|---|---|
| 1994 | 7.57 | 2.315 | $12,745 | $ 29,505 |
| 1995 | 7.62 | 2.152 | 12,355 | 26,588 |
| 1996 | 7.50 | 2.001 | 7,620 | 15,248 |
| 1997 | 7.39 | 1.862 | 5,680 | 10,576 |
| 1998 | 6.82 | 1.738 | 8,136 | 14,140 |
| 1999 | 6.66 | 1.628 | 12,089 | 19,681 |
| 2000 | 6.61 | 1.527 | 11,083 | 16,924 |
| 2001 | 6.60 | 1.433 | 0 | 0 |
| 2002 | 6.70 | 1.343 | 598 | 803 |
| 2003 | 6.75 | 1.259 | 1,196 | 1,506 |
| 2004 | 6.78 | 1.179 | 1,824 | 2,150 |
| 2005 | 6.78 | 1.104 | 2,452 | 2,707 |
| 2006 | 6.78 | 1.034 | 3,110 | 3,216 |
| Total | | 5.919 3/ | | $71,703 |

(e) **Annual Dollar Lost Revenue Component: $12,114**
The Annual Dollar Lost Revenue Component equals the Lost Revenue plus Interest divided by the sum of the Discount Rate Factors for the 2002-2006 period: $71,703/5.919.

---

1/ The Discount Rate Factor is based on interest from mid-year of the year under consideration through December 31, 2006. To get the factor, the interest rate for the year under consideration is halved, expressed as a decimal, and added to one (1). That "half rate" is then multiplied by one (1) plus the interest rate (expressed as a decimal) for each succeeding year through 2006 to get the Discount Rate Factor for the year. The factor expresses the value of lost revenue and interest to Bonneville resulting from under-recovery of actual project costs.

2/ Lost revenue results from applying a charge designed to recover Bonneville's costs in 2001 to the entire 2002-2006 period and from revenue over/under-recoveries since 1994. Because any lost revenue for 2001 is not known until after 2001, it will be included in the lost revenue for the next period. Unit generation costs at The Dalles (in real terms) are assumed to increase by 2 percent per year for the period 2002-2006. This estimate, when multiplied by the estimated sales under this Agreement, yields expected total costs. Lost revenue is calculated by subtracting expected revenue at 1.846 mills/kWh from expected costs.

3/ Total Discount Rate Factor is the total only for the years 2002-2006. This total is used since the lost revenue will be collected over the period 2002 through 2006.

Revision No. 3
Exhibit B, Page 4 of 4
Contract No. 14-03-32210
USBR Contract No. 14-06-100-2911
Effective at 2400 hours on
December 31, 2001

(f) **Annual Unit Lost Revenue Component: .748 mills/kWh**
The Lost Revenue Component in mills/kWh equals the Annual Dollar Lost Revenue Component divided by the estimated energy sales: $12,114/16,200 MWh.

UNITED STATES OF AMERICA
Department of Energy
Bonneville Power Administration

By: [signature]
*(Signature)*

Name: ROY B. FOX
*(Print/Type)*

Title: Manager for Federal Hydro Projects

Date: JUL 12 2001

UNITED STATES OF AMERICA
Department of the Interior
Bureau of Reclamation

By: [signature: Kenneth R. Pedde]
*(Signature)*

Name: Kenneth R. Pedde
*(Print/Type)*

Title: Acting Regional Director

Date: JUL 13 2001

United States Department of the Interior

BUREAU OF RECLAMATION
Pacific Northwest Region
1150 N Curtis Road, Suite 100
Boise ID 83706-1234

PN-3200

AUG 24 2001

Mr. Mike Richardson
Manager
The Dalles Irrigation District
P.O. Box 767
The Dalles OR 97058

Subject: Revised Irrigation Pumping Power Rate -- The Dalles Project, OR

Dear Mr. Richardson:

Your irrigation pumping power is supplied by The Dalles Power Plant of the Corps of Engineers and transmitted over the Bonneville Power Administration (BPA) transmission system. The costs used to determine your irrigation pumping power rate are those incurred by The Dalles Power Plant.

In accordance with our memorandum of understanding with BPA, the rate is to be reviewed not more often than every five years. The current rate has been in effect for seven years; however, BPA has now reviewed the costs for the 1995-2000 period and established a revised rate.

The new rate of 2.59 mills per kilowatt-hour will be effective January 1, 2002. Since this is a substantial increase in the rate, we are planning to meet with your board of directors on October 2, 2001, as previously discussed by telephone, to explain the circumstances leading to this increased rate. Please advise as to the time and location of this meeting.

If you have any questions, please contact Al Bolin at (208) 378-5294.

Sincerely,

Terrald E. Kent
Program Manager
Facility Operations
and Maintenance

cc: Area Manager, Lower Columbia Area Office, Portland OR
Attention: LCA-1001
bc: PN-1800

WBR:CBolin:vy:08/24/01:5294 H:\common\pn3200\al\tdalrate.242.wpd

# The Dalles Irrigation District

**Mike Richardson**
*Operations Manager*

Phone (541) 296
3503 Olney Road ♦ P. O. Bo
THE DALLES, OREGON

US Bureau of Reclamation
NW Area Director
Bill McDonald

Mr. McDonald

The position of the Board of Directors of The Dalles Irrigation District concerning the Districts power rate continues to be the position set forth in that letter from former Board Chairman; Don Bailey to the Bureau of Reclamation dated October 4, 1989, A copy of which is attached for your convenient reference.

The formula continuously used to compute the Districts power rate since 1961 has never included a charge for a "lost revenue component", nor does our contract provide for such a charge. Rather, our rate is to be based solely on generation costs at the Dalles Dam.

Sincerely

Marvin Polehn

Marvin Polehn

Chairman of the Board of Directors

SHENKER & BONAPARTE, LLP
ATTORNEYS AT LAW
ONE SW COLUMBIA STREET, SUITE 475
PORTLAND, OREGON 97258-2002
TELEPHONE: (503) 294-1118
FACSIMILE: (503) 294-0015
WEBPAGE: ashenkeresq.com

ARDEN E. SHENKER
ROBERT E.L. BONAPARTE
NELL HOFFMAN BONAPARTE

LICENSED IN OREGON, NEW YORK, AND WASHINGTON, D.C

ARDEN E. SHENKER
E-MAIL: ashenker@ashenkeresq.com

Operative letter on which we want A Response.

May 15, 2003

Mr. Terrald E. Kent, Program Manager
Facility Operations and Maintenance
U.S. Department of the Interior
Bureau of Reclamation- Pacific Northwest Region
1150 North Curtis Road, Suite 100
Boise, Idaho 83706-1234

Dear Mr. Kent:

Re: The Dalles Irrigation District
~~Our File No. 03192~~

We have been meeting with you and your colleagues in order to determine the appropriate charges that should have been provided for our captioned client under its agreement with the Bureau of Reclamation, of October 19, 1961. That agreement No. 14-06-100-2276, is unchanged since the time that it was negotiated and executed. Under that agreement we have concluded:

1. The Dalles Irrigation District (TDID) should not be charged for depreciation expenses.

2. TDID should not be charged for Bonneville Power Administration's assertions of lost revenue.

3. TDID should not be charged for any portion of the joint use or multiple purpose accountings other than for the generation of power.

We have not done the final accounting of how much our client has overpaid to the Bureau, and we would appreciate your undertaking to complete that assignment. We noted from our initial meeting with you in The Dalles on February 3, 2003, that you expressed your willingness to undertake that accounting assignment, after a determination of the obligation of TDID, conceptually, under its agreement with you, and, therefore, how much it was overcharged, since 1989.

Prior to 1989 TDID was charged at the rate of 1 mil per kilowatt hour. That was the original contemplation in the agreement with you. If you can explain to us how that portion of the bills that have been tendered to TDID shows, since 1989, that the actual costs of the production of power are in excess of that 1 millage rate, we will appreciate your making those explanations for us. It is possible, of course, that the actual rates, on increased efficiencies, are below 1 mil per kilowatt hour, but my client believes that it is obliged to maintain that 1 mil per kilowatt hour rate, under its agreement with you. Therefore, although a proper accounting might establish that the costs should be less than 1 mil per kilowatt hour, we do not make that request of you, in your further refinement and accounting.

We look forward to completing the arrangements with you, to effect the appropriate accounting and repayment. You had indicated that perhaps the repayment would be done by credits, rather than the actual transfer of funds. We are amenable to a discussion on that subject.

We look forward to hearing from you at your earliest opportunity. We do appreciate the kind courtesies that you and your colleagues have tendered to us, so that we could reach a full understanding of the basis on which the accounting properly should have been done for the benefit of our client and in keeping with its unique agreement with you.

Kind regards.

Arden E. Shenker

AES/dlt

CERTIFICATE OF FILING

I hereby certify that on January 26, 2006, a copy of the foregoing "DEFENDANT'S APPENDIX IN SUPPORT OF ITS MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ KELLY B. BLANK