UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **THE DALLES IRRIGATION DISTRICT**, Plaintiff, | Case No. 05-1042 C |
| | Judge Charles F. Lettow |
| **v.** | |
| **THE UNITED STATES OF AMERICA;** Defendant | **Declaration of Carol C. Opatrny in Opposition to Defendant's Motion to Dismiss** |

I.

I am familiar with the materials generated by the Bureau of Reclamation, the U.S. Army Corps of Engineers and the Bonneville Power Administration, in this case. I have reviewed the exhibits identified in the depositions taken in this case. I have reviewed the defendant's Motion to Dismiss and the appendices thereto (Def. App.).

II.

I am an economist who has served the electric power industry since 1980 with special emphasis on wholesale power and transmission rate design, wholesale and transmission markets and services. My client base includes utilities, marketers, transmission corporations, resource developers and,

wholesale customers (such as The Dalles Irrigation District) located in the Pacific Northwest and Northern Atlantic regions of the United States and Canada.

III.

The Defendant describes a formula, described as having been created by the Bonneville Power Administration in 1989, which resulted in a 25 percent increase in rates for The Dalles Irrigation District, in 1990, another 5 percent increase in 1995 and nearly a 100 percent increase in 2002. This means that in a period of twelve years, the rate increase for The Dalles Irrigation District was 159 percent. By contrast, over the same period of time (1989 – 2002), the Bonneville Power Administration Priority Firm rate (the wholesale power rate charged to BPA's public agency, cooperative and Federal agency customers) rose 42 percent overall.[1] This significant disconnect between power rates determined by BPA indicates to me that the application of the formula described by the Defendant was, in my opinion, as an economist familiar with the PNW electric power industry, out of control.

IV.

The Defendant refers to data in Def. App. 44 which the Defendant says was

[1] The PF Rate in 1989 included transmission service. Using BPA's Wholesale Power and Transmission Rate Projections 1992 – 2013, page 56, I derived a transmission rate for 1993 and applied the annual rate of escalation in order to derive a 1989 transmission charge of 1.05 mills/kW-hour. Reducing the 1989 PF rate by this amount enabled me to compare two power rates that did not include any costs associated with transmission service. This calculation reduced the 1989 PF rate to 21.55 and as a result, changed the overall rate increase between 1989 and 2002 to 49%.

used to develop rates. However, the information in Def. App. 44 does not permit anyone, with or without expertise, to determine the cost basis for the calculation of rates. Indeed, there is no indication in any of the materials in Def. App. on how actual costs or categories of costs were calculated or determined and how they resulted in any rates charged before and after 1989.

V.

In any event, the government's materials show numerous attempts to change the 1989 formula:

- A 2 percent rate of escalation was assumed by the government in the timeframes 1990-1994, 1995-1999, and thereafter, without any justification on the basis of actual costs calculated or determined.
- The 2 percent rate of escalation assumed for the timeframe 1990-2004, was without any reference to actual costs or consistent formulae.
- A "loss factor" was assumed until 1993, but not thereafter, and loss adjustments were made by the government so as to reduce the level of production and thus upwardly increase the rates charged to The Dalles.
- The underlying rates charged by the government escalated at a 5.7 percent annual average rate of growth, with no constancy between the

rate periods.

In short, regularly tweaking elements or components of the formula established in 1989 constitutes changes to the formula.

VI.

Def. App. 48 makes the claim that a change in accounting, from a sinking fund method of depreciation to a straight line method, would result in large increases in the current rates, but that the effect on long term rates would be very beneficial to the irrigation districts. That claim has certainly not held true. In any event, that November 1990 memorandum (Def. App. 48) illustrates the continuing changes made to each formula suggested by the Bonneville Power Administration to the Bureau of Reclamation and passed on to The Dalles Irrigation District by the Bureau of Reclamation.

VII.

Although requested by The Dalles Irrigation District, incomplete cost and rate data were furnished to me by representatives of the Bonneville Power Administration, the U.S. Army Corps of Engineers and the Bureau of Reclamation, starting in early 2004. Prior to my discussions with those government agency representatives, no such data had been compiled, much less furnished to any representatives of The Dalles Irrigation District.

Executed pursuant to the laws of the United States of America, under the

penalty of perjury, I declare the forgoing is true and correct. DATED this 16th day of February, 2006.

By: /s/ Carol C. Opatrny

**Carol C. Opatrny**

## Certificate of Filing

I HEREBY CERTIFY that on the 27th day of February, 2006, a copy of the foregoing **Declaration of Carol C. Opatrny in Opposition to Defendant's Motion to Dismiss** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated this 27th day of February, 2006.

SHENKER & BONAPARTE, LLP

By:__/s/ Robert E. L Bonaparte________

**Robert E. L. Bonaparte** OSB No. 88341
Shenker & Bonaparte, LLP
One SW Columbia, Ste. 475
Portland OR 97258-2002
Telephone: 503-294-1118
Facsimile: 503-294-0015
Email: bob@bb-law.net
Attorneys for Plaintiffs:**THE DALLES IRRIGATION DISTRICT**