IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE DALLES IRRIGATION DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-1042C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S
RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 7.2(c) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this reply to the response brief filed by plaintiff, The Dalles Irrigation District ("Dalles"), opposing our motion to dismiss.

DEFENDANT'S REPLY

In our moving brief, we established that Dalles' complaint should be dismissed for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 2501 because Dalles' 2004 lawsuit was filed more than six years after the accrual of its claim. We demonstrated in our moving brief that Dalles' claim accrued in 1989-1990 at the time the Government adopted a new rate formula for Dalles' annual power generation charges. We further demonstrated that, because Dalles did not file its lawsuit until 2004, its claims were time-barred by Section 2501.

In its response brief, Dalles asserts that our motion to dismiss should be denied because we failed to: (1) properly account for the Supreme Court's decision in Franconia Associates v. United States, 536 U.S. 129 (2002); (2) recognize the "correct basis" for Dalles' breach of contract claim; and (3) consider whether the applicable statute of limitations (i.e., 28 U.S.C. § 2501) was tolled because Dalles' breach of contract claim was "unknowable" until 2004. In advancing these arguments, Dalles articulates, for the first time, a claim for a series of partial breaches of section 14(b) of the Repayment Contract.

As shown below, these arguments are without merit and the Court should grant our motion to dismiss.

## I. Dalles' Newly Articulated Claim Is Neither A Series Of Breaches Of Section 14(b), Nor A Continuing Claim Based Upon The Government's Alleged Improper Rate Revision In 1989-1990

In its complaint, Dalles advances only two simple allegations in support of its breach of contract action: (1) that the Government, contrary to the provisions of the Repayment Contract, "[has] been charging the plaintiff with costs for the operation, maintenance, and replacement of facilities, together with interest expenses, none of which had been agreed to between the parties," (Compl. at ¶ 5); and (2) that the Government has "breached the contract with plaintiff, to the plaintiff's damage in the sum of $400,000 from 1998 to date." Compl. at ¶ 7.

Beyond these bare allegations, Dalles' complaint provides virtually no specifics regarding the alleged breach, e.g., what particular Government action constituted the breach, how the Government took that action and when that breach occurred. Fairly read, therefore, Dalles' complaint asserts a cause of action for a single, present breach of contract.

In response to these bare allegations, we filed our motion to dismiss. Our motion was premised upon the theory that Dalles has asserted a claim for a single, present breach of contract. We argued in our moving brief that, to the extent a breach of contract occurred, it occurred upon the Government's adoption in 1989-1990 of the new formula for determining Dalles' power generation charges. See Defendant's Motion to Dismiss ("Mot.") at 9.

We noted in our moving brief that, in limiting the period of its alleged damages to those occurring after 1998, Dalles appeared to acknowledge that section 2501 precluded any claims that occurred six years prior to Dalles' filing of its lawsuit in the United States District Court for the District of Oregon. Mot. at 7, n.4. We also noted that Dalles had failed to identify any Government action occurring in 1998 that would have commenced the section 2501 limitations period. Id. Accordingly, we argued that Dalles' breach of contract action accrued in 1989-1990, the time when Dalles' own correspondence demonstrated that it first

became aware of the new rate formula and that the formula would impose charges that Dalles considered beyond the scope of the Repayment Contract. Mot. at 9-11.

In its response brief opposing our motion to dismiss, Dalles for the first time alleges that its cause of action is "actually for a series of partial breaches of the Repayment Contract's provisions .... [and] is based upon a breach of the Defendant's annual duty under § 14(b) of the Repayment Contract to ensure that Dalles has not paid any amount in excess of the 'actual power charges' allocable to irrigation pumping and power for the Dalles Dam for the previous year and to credit back any overpayments to Dalles." Plaintiff's Response ("Resp.") at 14. In support of this new theory, Dalles cites to paragraph VII of its complaint. That paragraph, however, contains no factual allegations but, instead, merely incorporates previous paragraphs, none of which mention section 14(b) or allege any partial breaches of contract.[1]

---

[1] Dalles' response brief constitutes the first time that Dalles has pleaded with any reasonable specificity a claim for a series of partial breaches of section 14(b). As a result, Dalles' contention that the Government somehow failed to correctly interpret the vague allegations in the complaint is wholly without merit. <u>See</u> Resp. at 6-7, 8, 12. That said, the Government does not contest, for purposes of this motion, that the Repayment Contract imposes an annual duty upon the Government to review Dalles' annual charges and, if appropriate, credit Dalles with any surplus payment it may have made. The Government, however, has no duty to revise or review Dalles' rate. If the Government chooses to revise the rate, it may not do so not more than once in any five-year period. Def. App. 17.

Nonetheless, despite Dalles' newly articulated partial breach theory, it remains apparent that Dalles continues to base its cause of action upon the Government's adoption of the new rate formula in 1989-1990. In this respect, section 14(b) requires only that the Government conduct an annual review of Dalles' charges and, if appropriate, issue a credit for any surplus charge. Def. App. 17. However, Dalles makes no allegation, nor can it, that the Government ever failed to conduct an annual review of Dalles' charges or, if warranted by the review, failed to issue a refund credit. Indeed, there is no allegation in either Dalles' complaint or its response brief that the Government actually failed to conduct one of the annual reviews, or that it failed to issue a refund that was required by one of those reviews.

In the absence of such allegations, there simply is no breach of the duties imposed by section 14(b). Thus, reduced to its essence, Dalles' new theory is that the Government impermissibly revised the rate formula in 1989-1990, thereby breaching the Repayment Contract, and thereafter "tainting" the results of the Government's annual review of Dalles' charges. This is not an allegation of a partial breach of section 14(b), but an allegation of a continuing effect of the alleged improper rate revision in 1989-1990. As a result, Dalles' newly articulated claim is more properly characterized as a continuing claim based upon the alleged

breach that occurred via the rate revision in 1989-1990 and not a series of partial breaches of section 14(b).

As demonstrated in our moving brief, however, Dalles has failed to establish that it is entitled to avail itself of the continuing claim doctrine. Mot. at 12-14 (citing Brown Park Estates-Fairfield Development Co. v. United States, 127 F.3d 1449, 1456 (Fed. Cir. 1997) ("a claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim"); Ariadne Financial Services Pty. Ltd. v. United States, 133 F.3d 874, 879-80 (Fed. Cir. 1998) (continuing claim doctrine did not apply where Government's liability was fixed when it rejected a term of its contract entitling plaintiff to the use of supervisory goodwill, despite the fact that the Government subsequently repeatedly denied such use); Davidson v. United States, 66 Fed. Cl. 206, 209-10 (2005) (continuing claim doctrine does not apply where the claim concerns the Government's recalculation of plaintiff's payments in 1995, despite the fact that subsequent monthly payments were made according to the alleged miscalculation); Toney v. United States, 43 Fed. Cl. 28, 31 (1999) (continuing claim doctrine does not apply where plaintiff fails to allege "an independent violation of any cited statute or regulation during the six years prior to instituting suit"). As a result, the accrual date for Dalles' newly articulated cause of action remains in 1989-1990

when Dalles first became aware of the new rate and its effects. Dalles claim is, therefore, barred by section 2501.

II. The Cases Relied Upon By Dalles Are Inapposite

Dalles repeatedly asserts that our motion to dismiss impermissibly ignores the Supreme Court's decision in Franconia, and the Federal Circuit's decision in San Carlos Irrigation & Drainage District, 877 F.2d 957 (Fed. Cir. 1989) along with the trial court's decision upon remand from that decision. San Carlos Irrigation & Drainage District, 23 Cl. Ct. 276 (Cl. Ct. 1991), aff'd, 111 F.3d 1557 (Fed. Cir. 1997). Resp. at 12-13, 15. As discussed below, Dalles is wrong.

With respect to the Franconia decision, Dalles acknowledges that this case does not involve the same type of loan program as in Franconia (Resp. at 12), nor a contract repudiation as found in that case. Resp. at 21. For this reason alone, Franconia, and its rulings regarding the effects of the Government's anticipatory repudiation of a contractual obligation upon the accrual of an action for purposes of section 2501, are simply inapposite to this case. Moreover, to the extent that Franconia imposes a duty to "consider general contract principles" in pursuing a motion to dismiss pursuant to section 2501, (see Resp. at 12-13), we fulfilled that duty by reasonably interpreting the bare allegations in Dalles' complaint to be a

claim for a single, present breach of the Repayment Contract as the result of the 1989-1990 rate revision.

Dalles' reliance upon San Carlos is similarly unavailing. In San Carlos, the Federal Circuit held that the Government's contractual obligation to operate and maintain the dam works at issue in that case included specific duties to operate and maintain the dam spillways and the electric generation system. San Carlos, 877 F.2d at 960. Based upon this ruling, the trial court concluded upon remand that the Government's duty was a continuing one, and not a "one time" duty to maintain the facilities. In essence, the court ruled that there was a continuing duty to keep the spillways functional and, for each time the spillway did not function properly, there was a breach of that duty. Accordingly, the trial court rejected the Government's argument that the plaintiff's claim was time-barred pursuant to section 2501. San Carlos, 23 Cl. Ct. at 279 (1991).

Contrary to Dalles' argument, the facts in San Carlos are inapposite to those in this case. Unlike San Carlos, there has been no alleged breach of the duties imposed by section 14(b). Section 14(b) requires only that the Government review Dalles' annual charges and, if that review requires a refund, to issue that refund credit. As noted, there is no allegation in this case that the Government either failed to conduct an annual review or failed to issue a rebate that was required by

an annual review. Instead, Dalles' claim is that the 1989-1990 revision to the rate formula "tainted" the Government's later annual reviews and caused it to overcharge Dalles. This is not the same situation as in San Carlos and that case, therefore, does not control the result in this case. The cases cited in our moving brief are more persuasive precedent for the present case. Mot. at 13.

III. The "Concealment/Unknowability" Doctrine Does Not Apply To This Case

Dalles argues, again for the first time, that it is entitled to damages dating from 1989 to the present because the alleged breach was "concealed" from it or was "unknowable." Resp. at 24-26. As reflected in our moving brief's discussion regarding Dalles' correspondence with the Government, however, the concealment/unknowability doctrine does not apply to this case. Mot. at 9-11

As explained in our moving brief, Dalles was actively engaged in discussions with the Government in 1989 concerning the power rate formula when the formula was first adopted, and even argued to the Government that "operation and maintenance [costs] were specifically excluded in calculating [Dalles'] power costs." Mot. at 4; App. 45. This, of course, is precisely the same allegation that Dalles asserted in its complaint as a basis for its breach of contract claim. Compl. at ¶ V. It is clear that, based upon its own correspondence, Dalles was aware of the facts that form the basis for its current cause of action in 1989, at the

time Dalles was notified of the pending rate change. In these circumstances, Dalles cannot credibly argue that its cause of action was "unknowable."

Dalles submits with its response a declaration by Carol C. Opatrny in support of its argument that the rate change was "concealed and unknowable." Among other things, Ms. Opatrny opines in conclusory fashion that the Government's application of the rate formula was "out of control," (Decl. at ¶ III) and that the information provided Dalles in 1989 "does not permit anyone, with or without expertise, to determine the cost basis for the calculation of rates." Id. at ¶ IV.

The Court should disregard the Opatrny declaration for two reasons. First, the conclusions contained in the declaration are without sufficient foundation to be admissible or even reliable for the propositions they allegedly support. Indeed, it is difficult to see how Ms. Opatrny is able to opine how others may or may not be able to determine the cost basis for the rate determination based upon the information provided to Dalles in 1989. In this respect, it is important to note that Ms. Opatrny does not claim that the new power rate formula was concealed or unknowable to Dalles since 1989.

More importantly, the Opatrny declaration completely fails to address the correspondence between Dalles and the Government in 1989. As noted, that

correspondence plainly shows that Dalles was aware that the rate formula had: (1) changed and resulted in a substantial increase in Dalles' rate; and (2) included as a component operation and maintenance power generation costs that Dalles considered to be beyond the scope of the Repayment Contract. These facts, which are alleged in the complaint, establish that Dalles' cause of action accrued in 1989-1990 and are time-barred by section 2501.

## CONCLUSION

For all of the foregoing reasons, and those set forth in our moving brief, we respectfully request the Court to enter an order dismissing Dalles' complaint for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

/s/ Gregory T. Jaeger
GREGORY T. JAEGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
(202) 353-7955

May 3, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on May 3, 2006, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Gregory T. Jaeger