UNITED STATES COURT OF FEDERAL CLAIMS

**THE DALLES IRRIGATION DISTRICT**,

Plaintiff,

**v.**

**THE UNITED STATES OF AMERICA,**

Defendant.

Case No. 05-1042 C

Judge Charles F. Lettow

# PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Pursuant to Rule 14 (a) of Appendix A to the Rules of the United States Court of Federal Claims, the Plaintiff submits herewith:

## I STATEMENT OF FACTS AND LAW

A. Contentions of Law

1. The authorizing legislation for The Dalles Irrigation District specifically permits only generation costs to be charged to the plaintiff. The defendant has so admitted, effectively, under oath, but it would appear that the defendant, nevertheless, will dispute this conclusion.

2. There was to be no continuing annual financial adjustment for the operating, maintenance or replacement of the generating facilities at The Dalles Dam. The defendant has so admitted, effectively, under oath, but it would appear that the defendant, nevertheless, will dispute this conclusion.

3. The defendant has breached its 1961 and continuing contractual agreements with the plaintiff. The defendant will deny this conclusion, urging that it is excused from compliance with the contract.

4. The costs of power and energy from The Dalles Dam to be billed to the defendant by the plaintiff excluded the cost sharing for other projects and usages. The defendant evidently will agree to this conclusion, but deems it irrelevant.

5. The defendant had an annual obligation under paragraph 14(b) of the parties' contract to provide the plaintiff with estimated periodic charges. The defendant evidently will admit to this conclusion.

6. The defendant had an annual duty to provide the plaintiff with a statement of the actual power charges. The defendant evidently will admit to this conclusion.

7. Rates set for irrigation districts after repayment contracts have been entered into, had to consider the feasibility of the irrigation districts making the payments. The defendant effectively has so admitted, under oath, but it is unclear whether the defendant, nevertheless, may dispute the conclusion.

8. The contract between the parties excludes interest expenses to be charged by the defendant to the plaintiff. It is unclear whether the defendant will dispute this conclusion.

9. The contract between the parties did not permit fish and wildlife charges to be passed on by the defendant to the plaintiff. The defendant will dispute this conclusion.

10. A replacement charge is considered to be "capital" expense. The defendant effectively has so admitted, under oath, but it is unclear whether the defendant, nevertheless, may dispute the conclusion.

B. Mixed Fact and Law Contentions

1. The power charge allocation for the plaintiff exceeded the plaintiff's ability to pay which, therefore, reduced the rate charged by the defendant to the plaintiff. The defendant has so admitted under oath (*see* the deposition of Al Bolin, page 35).

2. If there were any new level of charge for the operation and maintenance of the facilities at The Dalles Dam, then the entire irrigation repayment obligation would have had to be reduced. The defendant has so admitted under oath (*see* the deposition of Terrald Kent, page 84).

3. The cost of power at The Dalles Dam must have been determined by the Bureau, because the power rate was set; however, such cost never was revealed to have been determined. The defendant has so admitted under oath (*see* the deposition of John Keys, page 42; *see also* exhibit 63, Answer To Interrogatory 17).

C. Contentions of Fact

1. The defendant at no time provided the plaintiff with a statement of actual power charges. The defendant may be disputing this contention.

2. The defendant did not provide The Dalles Irrigation District with a statement of actual energy costs in any year, from 1962 to 2006. The defendant may be disputing this contention.

3. The Bonneville Power Administration ("BPA") agreed with the defendant that the annual cost of the facilities used for the defendant's services would be waived, if capital investments were transferred to the defendant's books. Such transfer was made. The defendant appears to be in agreement with this contention, certainly as to the second sentence thereof.

4. The defendant and BPA agreed that the defendant was permitted to charge the plaintiff for reserve power and energy, only "for generation costs." The defendant disputes this contention. However, *see* the deposition of Sue Furst, page 70.

5. The agreement between the defendant and BPA was that the generation charge for power purchased for the Irrigation District would be the greater of 1 mil/kwh or actual generation costs; however, that was not the agreement between the defendant and the plaintiff. It is unclear whether the defendant will dispute this contention. In any event, it has been admitted under oath (*see* the deposition of Terrald Kent, page 21).

6. When the defendant, in 1977, computed the cost of generation of The Dalles Dam, for the Irrigation District, it was 0.31 mils/kwh. The defendant appears to accept this contention (*see* the deposition of Terrald Kent, page 39).

7. In 1982, the defendant obtained actual costs for generation figures from the BPA, showing that cost to be 0.52 mil/kwh. The defendant appears to accept this contention (*see* the deposition of Al Bolin, page 20).

8. Defendant has billed plaintiff for cost sharing for other projects and usages. The defendant does not appear to dispute this contention.

9. Defendant has charged plaintiff with the cost for the operation, maintenance and replacement of facilities, other than as set forth in paragraph 14(a) of the parties' agreement. The defendant disputes this contention.

10. Since 1989, the method employed by the defendant to assess charges for the plaintiff under the parties' contract was derived by the defendant from the BPA, pursuant to a memorandum of understanding between the defendant and the Bonneville Power Administration. It is unclear whether the defendant will dispute this contention.

11. The charge made by the defendant to the plaintiff is the same for each kilowatt hour that BPA provides for its customers. It is unclear whether the defendant will dispute this contention. In any event, *see* the deposition of Al Bolin, page 37).

12. Defendant has charged plaintiff with interest expenses. It is unclear whether the defendant will dispute this contention.

13. Irrigation power is charged no interest by the defendant. The defendant apparently agrees with this contention. In any event, *see* the deposition of Al Bolin, page 39.

14. Much of the increased costs passed on by the defendant to the plaintiff, on annual billings, was associated with fish and wildlife activities, allocated to power by the defendant and other government agencies. It is unclear whether the defendant will admit this contention.

15. The inclusion of fish and wildlife costs in the rates provided by the defendant for the plaintiff were decisions made by BPA and accepted by the defendant. The defendant apparently agrees with this contention. In any event, *see* the deposition of Al Bolin, page 52.

16. Fish and wildlife charges are both specific and joint cost allocations made for the defendant, by BPA, to pass along to the plaintiff. The defendant apparently agrees with this contention; in any event, *see* the deposition of Karen Miller, pages 27, 37, 41, 46.

17. Over the years since 1981, substantially more of the time and effort of employees at The Dalles Dam is devoted to alleviating concerns for fish and wildlife, and the cost of that remedial work has increased. The defendant evidently agrees with this contention; in any event, *see* the deposition of Dennis Stocks, page 22.

18. No assessment was made by the defendant on the impact of rate increases on the repayment capacity of any irrigation district. The defendant evidently agrees with this contention; in any event, *see* the deposition of Al Bolin, page 50.

19. The Irrigation District's ability to pay has never been considered a limitation on what rate could be imposed by the defendant on the plaintiff. The defendant evidently agrees with this contention; in any event, *see* the deposition of Terrald Kent, page 48.

20. It was commonplace that reports to the Congress before authorizing a project would determine that operating costs would be greater than the ability of the Irrigation District to pay; in that event, taxpayers or the power revenue source, such as BPA, would need to pick up the difference. The defendant evidently agrees with this contention; in any event, it has been judicially admitted. *See* the deposition of Bill Lloyd, page 30.

21. No reports have been made to the Congress by the defendant on pumping power rates taking into consideration the ability to pay off the irrigator, such as the plaintiff. The defendant evidently agrees with this contention; in any event, it has been judicially admitted. *See* the deposition of Bill McDonald, page 59.

22. Before the authorization of The Dalles Dam project for The Dalles Irrigation District, the studies determined the ability of the Irrigation District to repay costs "over the life of the contract." The defendant evidently agrees with this contention; in any event, it has been judicially admitted. *See* the deposition of Ryan Patterson, page 18.

23. What changed in 1989 was the application of the standard methodology, which the defendant obtained from BPA, to determine what costs would be included in the rates.

The defendant evidently agrees with this contention; in any event, it has been judicially admitted. *See* the deposition of Al Bolin, page 42.

24. Actual costs in the period until 1989 were irrelevant to the defendant, but those costs were lower than 1 mil/kwh. It is unclear whether the defendant disputes this contention. In any event, s*ee* the deposition of Al Bolin, page 52.

25. The defendant did not determine the cost of power at The Dalles Dam. It is unclear whether the defendant disputes this contention. In any event, s*ee* the deposition of Al Bolin, page 68.

26. The Bureau of Reclamation had no corrections for Sue Furst's report. The defendant evidently accepts this contention. In any event, s*ee* the deposition of Al Bolin, page 73.

27. The defendant has never disagreed with the findings or report in Exhibit #31. The defendant evidently accepts this contention. In any event, s*ee* the deposition of Terrald Kent, page 66.

28. Despite the request for a financial feasibility statement from the defendant, none was prepared. It is unclear whether the defendant disputes this contention. In any event, s*ee* the deposition of Al Bolin, page 79.

29. The defendant and BPA have made no change to their assessment that defendant's ability to charge the plaintiff for reserve power and energy is only for generation costs. The defendant disputes this contention. *See* Furst deposition, pages 70-77.

30. The only costs that were to be a part of the rate charged to The Dalles Irrigation District by the defendant are of the generation facilities at The Dalles Dam. The defendant disputes this contention. Nevertheless, *see* Kent deposition, page 100.

31. The defendant's rates charged to the plaintiff were set to recover operation and maintenance costs, including replacement costs. The defendant accepts this contention. In any event, *see* the deposition of Terrald Kent, page 17.

32. When the defendant refers to charges passed on to the plaintiff for "OM&R" the references are to operation, maintenance and replacement charges. The defendant evidently accepts this contention. In any event, *see* the deposition of Bill McDonald, page 44.

33. At no time did the defendant provide a credit adjustment for overpayment by the plaintiff. The defendant evidently accepts this contention.

34. The first time there was a review of Irrigation District rates by the defendant was thirty years after the construction of the projects, in 1989. The defendant evidently accepts this contention, judicially admitted. *See* the deposition of John Keys, page 25.

35. When John W. Keys, III, later the commissioner of the Bureau of Reclamation, became the assistant director of the Pacific Northwest region, the irrigation power charge made to The Dalles Irrigation District by the Bureau was 1 mil/kwh, when the actual cost for operation and maintenance at The Dalles Dam, for "generation" was 0.31 mil, according to Exhibit 12. It is unclear whether the defendant accepts this contention. In any event, *see* the deposition of John Keys, page 32.

36. In 1989 the difference between the generation costs for the plaintiff (0.52 mil/kwh) and plaintiff's payment (1 mil/kwh) was for capital cost repayment. The defendant evidently accepts this contention. In any event, *see* the deposition of John Keys, page 62.

37. In addition to generation costs, the costs of depreciation also are passed through from the defendant to the plaintiff. The defendant evidently accepts this contention. In any event, *see* the deposition of Lisa Kaiser, page 69.

38. The US Army Corps of Engineers cost report for The Dalles Dam was on the basis of construction costs, not operating irrigation costs. The defendant evidently accepts this contention. In any event, *see* the deposition of Bill McDonald, page 71.

39. The defendant's policy was to prepare power repayment studies annually, to determine if a rate adjustment were needed. It is unclear whether the defendant accepts this contention. In any event, *see* the judicial admission in the deposition of John Keys, page 79.

40. The defendant understood that its ability to charge the plaintiff for reserve power and energy could pass through only the generation costs, for operation. The defendant disputes this contention, judicially admitted, nevertheless. In any event, *see* the deposition of Bill Lloyd, page 42.

41. When BPA must purchase power on the open market because it cannot generate power through the turbines when water is spilled over the spillways for anadromous fish, those BPA costs are part of the rates which the defendant charges to the plaintiff. The defendant evidently accepts this contention.

42. Since the early 1980s, no-one has prepared a cost allocation for The Dalles Dam without joint allocations of costs. The defendant evidently accepts this contention.

43. At The Dalles Dam, purposes in addition to hydro power are included in joint costs, for fish and wildlife, recreation, navigation, water supply, flood control, and irrigation. It is unclear whether the defendant accepts this contention.

44. The defendant's reference to a feasibility report in Exhibit #8 was an economic study. The defendant evidently accepts this contention

D. <u>Defendant's Factual Contentions.</u>

1. The plaintiff generally accepts the defendant's description of the history of the Reclamation Acts of the United States.

2. The plaintiff generally accepts the defendant's description of the feasibility report for The Dalles Irrigation project.

3. The plaintiff specifically accepts the defendant's description of The Dalles Irrigation Project, setting a maximum of $89,000 for annual operating costs, including $58,200 for salaries and $25,700 for purchase power.

4. The defendant correctly quotes from the provisions of the enabling legislation for and the contract between The Dalles Irrigation District and the US Bureau of Reclamation.

5. The plaintiff generally accepts the defendant's description of a role played by the US Army Corps of Engineers, which is not a party to the contract between The Dalles Irrigation District and the US Bureau of Reclamation. The defendant disputes the applicability of a Cost Allocation Report of the US Army Corps of Engineers, as having any applicability to the ongoing operations of project power purchases.

6. The defendant's description of the contract between the parties omits the defendant's obligation pursuant to article 14(b) to make an annual determination of actual power costs.

7. The defendant's description of its relationship with the US Bonneville Power Administration is irrelevant to the issues in our case.

8. The lost revenue component urged by the defendant is not a proper charge to the plaintiff from the defendant under the contract of the parties.

9. Generation costs to be charged by the defendant to the plaintiff under the contract of the parties do not include capital costs and depreciation.

10. Costs associated with navigation, joint and multipurposes are not a proper charge from the defendant to the plaintiff.

E. Issues to be Resolved by the Court

1. Was there a new level of charge for the operation and maintenance of the facilities at The Dalles Dam requiring the irrigation repayment obligation to have been reduced?

2. Did the defendant ever provide to the plaintiff a statement of actual annual power charges?

3. Was the agreement between the defendant and the Bonneville Power Administration different from the agreement between the defendant and the plaintiff under the contract to the parties, for power purchase cost determinations?

4. Has the defendant included in its charges to the plaintiff cost sharing for other projects and usages?

5. Has the defendant charged the plaintiff for interest expenses?

6. Has the defendant charged the plaintiff for joint uses and multipurposes?

7. Has the defendant charged the plaintiff for costs beyond those of generation at The Dalles Dam?

8. Has the defendant charged the plaintiff for fish and wildlife activities?

9. Has the defendant charged the plaintiff for replacement costs for the project?

## II APPLICABLE LEGAL PRINCIPLES

A. The government has a contractual duty, pursuant to §§14(a) and (b) of the contract, to make rate determinations, no more frequently than once in a five-year period, and to provide a preliminary estimate of power charges each year. *The Dalles Irrigation District v. U.S.*, 71 Fed.Cl. 344, 351—352 (2006).

B. The plaintiff's obligation to pay is subject to the defendant's annual duty to determine actual costs, and to reconcile any difference between estimated charges paid and actual charges incurred. (*Id*.)

C. The defendant's breach of the contract occurs each year that the government does not provide actual cost data and credits for overpayment. (*Id*.)

D. The defendant breaches the contract for any five-year rate cycle by failing to restrict charges to those provided in the contract.

E. The defendant breached the contract each year that it charged the plaintiff more than the "actual power charges." *See* San Carlos Irrigation & Drainage District v. U.S., 23 Cl. Ct. 276 (1991).

F. The Defendant's Positions.

1. The defendant's interpretation of the parties' contract is not given deference any more than that of any other party to any other contract.

2. Federal reclamation laws do not supersede the provision of the parties' contract, which was enabled specifically by legislation which was *in haec verba* with the contract terms for power purchase charge computations.

/////

/////

## III MISCELLANEOUS

A. The parties have agreed, and the Court has ordered that the applicable facts and law at this stage of the proceedings are limited to issues of liability.

B. Jerome Dinan

Although the plaintiff had indicated an interest in deposing this government witness, on further review of the depositions previously taken of Mr. Dinan's successor, Lisa Kaiser, and supervisor, Mark Jones, it will not be necessary for plaintiff to seek the deposition of Mr. Dinan.

DATED this 1st day of October, 2007

SHENKER & BONAPARTE, LLP

By: /s/ Arden E. Shenker

**Arden E. Shenker**
OSB No. 62082
ashenker@ashenkeresq.com
Shenker & Bonaparte, LLP
1500 SW First Avenue, Suite 630
Portland, OR 97201
Telephone: 503-294-1118
Facsimile: 503-294-0015

Attorneys for Plaintiffs
**THE DALLES IRRIGATION DISTRICT**

**Certificate of Filing**

I hereby certify that on the 1st day of October, 2007, a copy of the foregoing "Plaintiff's Memorandum of Contentions of Fact and Law" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

SHENKER & BONAPARTE, LLP

**Arden E. Shenker,** OSB No. 62082
Shenker & Bonaparte, LLP
One SW Columbia, Ste. 475
Portland OR 97258-2002
Telephone: 503-294-1118
Facsimile: 503-294-0015
Email: ashenker@ashenkeresq.com
Attorneys for Plaintiffs: **THE DALLES IRRIGATION DISTRICT**