IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE DALLES IRRIGATION DISTRICT,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant. | ) | No. 05-1042C<br>(Judge Lettow) |

DEFENDANT'S MOTION IN LIMINE

Pursuant to Rule 7 of the Rules of the United States Court of Federal Claims ("RCFC") and Federal Rules of Evidence ("FRE") 602, 701, and 702, defendant, the United States, respectfully requests that the Court exclude from evidence the testimony and expert report of the plaintiff's expert, Carol Close Opatrny. Ms. Opatrny is proffered as "an expert in the electric utility industry" who "will describe the context and background for understanding the operation of the parties' 1961 Contract." Pl. Witness List at 3 (Doc. # 48)[1]. Ms. Opatrny's testimony should be excluded because, assuming arguendo that Ms. Opatrny is a qualified "electric utility industry" expert, such expertise is not useful to understanding either the power rate in dispute or the context and background of the power rate for the following reasons: (1) the plain language of the 1961 "repayment contract" at issue provides that the plaintiff's power rate is determined by the Secretary of the United States Department of the Interior pursuant to Federal Reclamation law – not subject to "electric utility industry" rate-setting regulations; and (2) Ms. Opatrny's opinions, which by her own admission are based upon her interpretation of contract provisions, are not supported by the type of specialized or technical expertise that would assist the Court in making its interpretation of the applicable contract or statutory provisions, or to substitute for the discretion afforded the Secretary of the Interior by the applicable contract and statutory provisions.

---

[1] "Doc. # ___" identifies the cited document by its docket number in this Court's electronic docket report.

## FACTUAL BACKGROUND

The pending trial has been scheduled to determine whether plaintiff's power rate contains costs "excluded" by the repayment contract. See Plaintiff's Complaint ¶ V ("Pl. Compl.") (Doc. # 4). The repayment contract is the result of the Federal development of The Dalles Irrigation Project ("Project") along the Columbia River near The Dalles, Oregon.

The Reclamation Act of June 17, 1902, and related acts, codified primarily at 43 U.S.C. §§ 372-573, provided for Federal irrigation projects to promote development of arid lands in the western United States.

The Reclamation Project Act of 1939, codified at 43 U.S.C. §§ 485 through 485h, requires that before undertaking construction of any Federal irrigation project, the Secretary of the Interior must submit a report to Congress addressing the engineering and financial feasibility of the project. The 1939 Act provides that if estimated construction costs of a proposed irrigation project cannot be repaid by beneficiaries, construction may commence only with congressional approval. 43 U.S.C. § 485h(a). On June 21, 1960, the Department of the Interior submitted to Congress "A Report on the Western Division, The Dalles Project, Oregon, Pursuant to Section 9(a) of the Reclamation Project Act of 1939" ("feasibility report"), recommending authorization of the The Dalles Project.

On September 18, 1960, Congress enacted Pub. L. No. 86-745, authorizing the Secretary of the Interior to construct, operate, and maintain the Project. The Act provides that the Project "shall consist of the following principal works: a main pumping plant to be located at a site on the Columbia River; a booster and relift pumping plant with reregulating reservoirs; and a distribution system."

Section 2(c) of the legislation directed the Secretary to furnish power for irrigation pumping purposes from The Dalles Dam. Section 2(c) in its entirety provides:

> Power and energy required for irrigation pumping for the western division of The Dalles Federal reclamation project shall be made available by the Secretary from The Dalles Dam powerplant and other Federal plants

> interconnected therewith at rates not to exceed the costs of such power and energy from The Dalles Dam taking into account all costs of the dam, reservoir, and powerplant which are determined by the Secretary under the provision of the Federal reclamation laws to be properly allocable to such irrigation pumping power and energy.

(emphasis added). The Dalles Dam is a distinct and separate Federal project from The Dalles Irrigation Project. The Dalles Dam Project was authorized by the Flood Control Act of 1950, Pub. L. No. 81-515 § 204 (64 Stat. 163, 179), which authorized the United States Army Corps of Engineers ("Corps") to construct and operate The Dalles Dam facility as a multi-purpose project more than a decade before Congress authorized The Dalles Irrigation Project.

On October 19, 1961, the United States Bureau of Reclamation and plaintiff, The Dalles Irrigation District, entered into the contract at issue. Section 14(a) of the contract addresses pumping power requirements and rates for furnishing power to operate and maintain the Project:

> For the purposes of operating and maintaining the project works, the Secretary will make available to the District that power and energy required for irrigation pumping during the irrigation season from The Dalles Dam powerplant and other federal powerplants connected therewith. The power and energy will be furnished to the District at the point where the project 12.5-kv electric distribution line is connected to The Dalles substation of the United States or at such other points as are agreed upon between the United States and the District, at rates per kilowatt-hour sufficient to cover the costs of such power and energy from The Dalles Dam, taking into account all costs of the dam, reservoir and powerplant which are determined by the Secretary under the provisions of the Federal Reclamation Laws to be properly allocable to such pumping power and energy. The initial rate shall be one (1) mill per kilowatt-hour. This rate of one (1) mill shall be effective for the first irrigation season and shall continue until such time as the Secretary determines, in accordance with the provisions set forth above, that a different rate is applicable. Such a determination shall not be made more frequently than once in any five-year period.

(emphasis added). Reclamation furnishes power to plaintiff pursuant to a 1963 Memorandum of Understanding ("MOU") with the Bonneville Power Administration ("BPA") – the Federal agency responsible for transmitting and marketing power from the Federal Columbia River Power System.[2] The MOU "provid[es] for the transmission, transformation, and delivery of electric energy and other special arrangements for electric service to the irrigation pumping loads of the Western Division of The Dalles Project, Oregon."

The rate remained at the base 1-mill per kilowatt hour ("kWh") from the 1960s through the 1980s, during which time Reclamation determined that costs for furnishing power at The Dalles Dam had not exceeded the 1-mill rate. However, in 1990, the Department of the Interior's Assistant Secretary of Water and Science approved a revision to the rate formula for power consumption at the Project. To meet increased costs, between 1990 and 2007, Reclamation revised the rate four times pursuant to the 1990 methodology.[3]

The power rate for The Dalles Irrigation Project contains two components: (1) Operation and Maintenance ("O&M") and depreciation costs at The Dalles Dam (divided by power generation at The Dalles Dam to determine a per-unit cost in mills per kWh); and (2) the Lost

---

[2] At the time of the 1963 MOU, both Reclamation and BPA were agencies within the United States Department of the Interior. The Administrator of BPA was authorized to dispose of electrical energy generated at various federal hydro-electric projects in the Pacific Northwest, pursuant to the Bonneville Project Act of August 20, 1937, as amended, and pursuant to Orders of the Secretary of the Interior No. 2563, dated May 2, 1950, and No. 2860, dated January 19, 1962. In 1977, BPA was transferred to the newly created United States Department of Energy pursuant to the Department of Energy Reorganization Act, Pub. L. No. 95-91. The Administrator of the BPA retained responsibility for power marketing for federal facilities operated by the Corps and Reclamation as part of the Federal Columbia River Power System. Pub. L. No. 95-91 § 302(1)(a) (codified at 42 U.S.C. § 7152).

[3] Section 14(a) of the contract provides that the rate can only be changed "once in any five-year period." The 1990 through 1995 rate was 1.227 mills per kWh. The rate has been increased to the current rate of 5.06 mills per kWh. This is still one the lowest rates for Reclamation's Pacific Northwest Region.

Revenue Component.[4]

The O&M and depreciation components are further distinguished between The Dalles Dam Project costs associated solely with power generation (single-purpose costs,) and "joint" or "multi-purpose" costs that are shared by the two purposes of The Dalles Dam Project, power generation and navigation. Costs associated solely with navigation at The Dalles Dam are allocated 100 percent to navigation and are not included in the power rate formula. Costs associated solely with power generation, such as The Dalles Dam pumping plant, are allocated 100 percent to power.

Costs associated with "joint" or "multi-purpose" facilities benefitting both power generation and navigation, including the dam and its reservoir, are allocated on the following basis, consistent with the Corps of Engineers' 1967 Cost Allocation Report: 72 percent of O&M to power generation, and 28 percent to navigation; and 74 percent of capital costs, in the form of depreciation (including those for the dam and reservoir), to power generation and 26 percent to navigation.

Consistent with The Dalles Irrigation Project authorizing legislation and the repayment contract between Reclamation and the plaintiff, the power rate reflects all costs of The Dalles Dam powerplant, dam, and reservoir properly allocable to plaintiff.[5]

Plaintiff's dispute certain costs included in its power rate. Specifically, plaintiff alleges that:

---

[4] The Lost Revenue Component is summarized in the June 19, 2006 Opinion and Order (Doc. # 20) at 5, n. 5.

[5] Though also properly allocable to plaintiff under the repayment contract and enabling legislation, plaintiff is not charged for transmission of the power from The Dalles Dam to the Project.

> [t]he costs of such power and energy from The Dalles Dam excluded cost sharing for other projects and usages. Notwithstanding the contract between the parties, the defendants have been charging the plaintiff with costs for the operation, maintenance, and replacement of facilities, together with interest expenses, none of which had been agreed to between the parties.

Pl. Compl. ¶ 5. Plaintiff proposes a number of witnesses at the pending trial to address issues of liability, in support of its contention that defendant has breached its contract with the plaintiff.

**SUMMARY OF THE ARGUMENT**

Ms. Opatrny's purported expert testimony should be excluded from the pending trial because her expertise in the commercial power industry is wholly irrelevant to the unique requirements of a Reclamation repayment contract, and the bulk of her expected testimony relates to her interpretation of contract language and governing statutes – matters that this Court is best suited to decide. Similarly, her expert report is based upon her interpretation of the contract, and where it is not, focuses upon damages which are not an issue in the upcoming trial.[6] Thus, Ms. Opatrny's testimony and expert report would be singularly unhelpful to the Court.

Ms. Opatrny was hired to provide a damages calculation. Deposition of Carol Close Opatrny at 5:1-2; 11:21-25; 12:1-10; 13:1-9 ("Opatrny Dep.") (excerpted portions attached hereto as Exhibit A). This, by its terms has nothing to do with an opinion about "the context and background" of the 1961 contract at issue. She does not have any independent knowledge of the parties' dealings, and her opinions would be anecdotal at best, based upon her reading of certain historical documents which the Court can read for itself.[7]

---

[6] Indeed, she states in her report that, "The purpose of this report is to provide an estimate of the financial damages that The Dalles has incurred for the time period defined as August 18, 1998 to date." Opatrny Expert Report at 1.

[7] The only course of prior dealings in this case, which no one contests, is that The Dalles Irrigation District disputed that it should pay the amounts established by Reclamation.

**ARGUMENT**

I. Ms. Opatrny's Proffered Testimony Interpreting The Repayment Contract And Expert Report Containing Damage Calculation Are Not Admissible At Trial Where The Sole Issue Is Liability Under A Repayment Contract

Plaintiff has not explained, and we fail to discern, how Ms. Opatrny could offer testimony on non-legal matters or on matters that would require an "electric utility industry" expert. The extent of Ms. Opatrny's proffered testimony is limited to understanding the "context and background for understanding the operation of the parties' 1961 [c]ontract." Pl. Witness List at 3. The power costs involved in the breach of contract allegation are just that – contractual. The rates are not subject to electric utility industry rules or regulations, nor commercial in nature. Further, her deposition testimony reflects that her "damages" analysis was premised upon her interpretation of the meaning of the contract, and she repeatedly asserted that her opinions were based upon her efforts to interpret contractual provisions.

Expert testimony is admissible when:

> [. . .] scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FRE 702. This rule imposes upon the Court a special "gatekeeping obligation" to prevent the introduction of certain expert testimony that is irrelevant or unreliable. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999). The standard for admissibility of expert opinion

---

Reclamation, on the other hand, asserts that plaintiff must pay its share of all costs, as determined by the Secretary, except for those associated with transmission of power to the District.

was established by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and this standard has been extended to testimony based on "technical" and "other specialized" knowledge. Kumho, 526 U.S. at 141 (determining that an inquiry on whether the opinion is "tied to the facts" of a particular "case" must be made where expert testimony is offered).

As stated earlier, plaintiff offers Ms. Opatrny as "an expert in the electric utility industry" who "will describe the context and background for understanding the operation of the parties' 1961 Contract." Pl. Witness List at 3. In this context, plaintiff submitted Ms. Opatrny's expert report to defendant on November 8, 2006, and the Government deposed Ms. Opatrny on February 15, 2007.

In her deposition, Ms. Opatrny identifies herself as an "electrical utility industry" consultant with special emphasis in "wholesale" power transmission markets and rate design and that she had been asked by plaintiff's counsel to "prepare a damages estimate." Opatrny Dep. at 13:1-9. However, the power rate at issue is not a "wholesale" power rate, but pertains to "reserve power." "Reserve power" is power furnished at cost to Federal reclamation projects, such as The Dalles Irrigation Project, before Federally generated power is marketed to commercial customers.

Ms. Opatrny further acknowledges that the basis for her opinions relating to the plaintiff's power rate are based upon her interpretation of the repayment contract:

> Q. In that first statement you say . . . "The issue in this case is determining the actual cost of generation from The Dalles Dam, as this should be the basis for the charge for power paid by The Dalles for irrigation pumping." Why do you use the term "should be"?
>
> A. Because that's my interpretation of the repayment contract between The Dalles Irrigation District and the Bureau of Reclamation.

Opatrny Dep. at 20:15-24. When her opinion regarding plaintiff's obligation under the repayment contract was tested, she replied:

> A. The actual cost of generation in terms of what should be properly allocated to The Dalles pumping charges.
>
> Q. And that's your interpretation of the contract?
>
> A. That's correct.

Id. at 21:20-25; 22:1-3. And again she explained in her deposition that:

> A. The repayment contract language that I recall indicates that the costs that are to be charged for pumping should be those costs that are properly allocable. And, in my opinion, the costs that The Dalles has been charged exceed those that should be allocated to them.
>
> Q. Are you able to tell me what particular portion or provisions in the contract you're relying on in making that particular conclusion?
>
> A. The section of the repayment contract to which I'm referring is Section 14.

Id. at 25:23-25; 26:1-8. And again, she stated:

> Q. So you interpreted the contract's use of the term "properly allocable cost" to reach the conclusion contained in this sentence here?
>
> A. That's correct.

Id. at 50:12-15. When pressed further, she responded:

> Q. . . . But are you able to point me to a specific provision in the contract that's being violated by the lost revenue component?
>
> A. I would need to look at the contract to tell you exactly which provisions, but I'm referring to the revision – excuse me – the language that limits the frequency of modifying the charge.
>
> Q. Okay. So that would be based on your interpretation of the contract?
>
> A. That's correct.

Id. at 66:16-25; 67:1.

Ms. Opatrny also acknowledges that her opinions about the appropriate components of

plaintiff's power rate are based upon her review of other historical documents, as well, including the 1962 Definite Plan Report for The Dalles Irrigation Project submitted to Congress by the Bureau of Reclamation. Id. at 56:11-24. What is missing from this exchange is Ms. Opatrny's opinion, based on scientific, technical, or other specialized knowledge that would assist the Court in understanding evidence or facts.

In short, in terms of liability, the sole subject of this trial, plaintiff has failed to identify any testimony that would be anything more than Ms. Opatrny's interpretation of the contract terms, divination of the parties' intent in the 1960s, or anecdotal evidence based upon her reading of documents that she received from plaintiff's counsel.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the Government's motion in limine to exclude Ms. Opatrny's testimony and expert report.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL
CLARK MILLER
U.S. Department of the Interior
Attorney-Advisor
Field Solicitor's Office
960 Broadway Ave., Suite 400
Boise, ID 83706
Tel: (208) 334-1906
Fax: (208) 334-1918

/s/ Armando A. Rodriguez-Feo
ARMANDO A. RODRIGUEZ-FEO
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-3390
Fax: (202) 514-8624

Attorneys for Defendant

October 18, 2007

CERTIFICATE OF FILING

I hereby certify that on this 18th day of October, 2007, a copy of the foregoing "DEFENDANT'S MOTION IN LIMINE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/Armando A. Rodriguez-Feo