UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **THE DALLES IRRIGATION DISTRICT**, | Case No. 05-1042 C |
| Plaintiff, | Judge Charles F. Lettow |
| **v.** | |
| **THE UNITED STATES OF AMERICA,** | |
| Defendant. | |

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERT</u>**

## INTRODUCTORY STATEMENT

The defendant's *In Limine* Motion to Exclude the testimony of expert Carol Opatrny misses the mark. The Motion relies upon Federal Rule of Evidence 602, which has nothing to do with expert testimony and omits reference to Federal Rule of Evidence 703, which states the bases for the opinion testimony by experts. Although Rule 703 permits an expert to testify based upon facts or data even if inadmissible in evidence, in our case practically all of the facts and data will be introduced in evidence. Moreover, Ms. Opatrny personally met with the representatives of the defendant, and personally obtained much of the relevant data from those representatives. In the arcane world of the public power and electric utility industry, experts frequently are given that access by the government representatives when requested by parties who seek to maximize efficiencies. That happened here.

Although Ms. Opatrny will be testifying solely with respect to liability issues in the coming trial, the only discovery which the defendant sought from the plaintiff's expert was on

damage issues, and that will not be the subject of Ms. Opatrny's testimony. Nevertheless, her report on damages, furnished to the defendant, which was the basis on which the expert's deposition was taken by the defendant, substantively addresses many of the liability issues which will be the subject of her testimony. Therefore, excerpts of that 150-page expert report are attached to this memorandum. Some of the expert's statements of qualification are attached to that report and hereto, but it would appear that the defendant does not question those qualifications; indeed, Ms. Opatrny has testified many times in federal proceedings, on electric power utility rate issues.

The defendant's main point, however, is that the context for the interpretation of the parties' contract should be ignored. The defendant points instead to the contract language providing that the Secretary determines the "property allocable" cost of "such" power as "required" for irrigation pumping, from The Dalles dam. The Secretary's determination is limited to those costs "properly" allocable to the specific pumping power and energy in this repayment contract; what "such" power is, and on what basis actual costs should be determined as properly allocable, are at least two questions unanswered by the repayment contract. The parties' course of dealing, over the past half a century, will help in reaching that answer; indeed, the defendant's representatives, over that course of dealing, recognized that they could not do what they now propose to do, based upon legal advice submitted to the defendant by its own lawyers.

Finally, by way of introduction, the defendant ignores its clear and continuing breach of its contractual obligation to provide an annual determination of the actual costs of the generation of the power provided for the plaintiff. The materiality and significance of that breach is a proper subject for this properly qualified expert. The economic significance of

that and other continuing breaches of the parties' contract is saved for a day beyond the current trial.

**FACTS**

The forthcoming trial is not scheduled to determine whether the plaintiff's power rate contains that which was excluded by the repayment contract. The rate does contain those exclusions. The trial, however, is one of liability. And the essential question is whether the defendant has breached the parties' contract.

The parties' contract does not provide an opportunity for the defendant to get whatever the market will bear, nor to seek maximum return to the Bonneville Power Administration. Rather, the parties' contract, in §14(a), restricts the rate to covering the costs of the power and energy submitted.

It is true that the Bonneville Power Administration (BPA) and the Bureau of Reclamation (Bureau) have agreed between themselves on what BPA would charge to the Bureau. But it is also true that the Bureau has never revised its contract with the Irrigation District. And Bonneville has no contract with the Irrigation District. It is true that Bonneville charges the Bureau for operation and maintenance of jointly used facilities, as well as depreciation costs, and Bonneville also charges for a lost revenue component, having to do with the time value of money, a form of interest. More importantly, for our case, it is true that the Bureau cannot charge the District for joint use costs, for depreciation or for interest. The Bureau separately receives capital cost reimbursements from the District, and they are not at issue here.

It is also true that the U.S. Army Corps of Engineers prepared a cost allocation report, for capital cost items at The Dalles Dam. More importantly, for our case, the Irrigation

District and the Bureau are not parties to that report, nor is it provided for in the repayment contract between the District and the Bureau.

Relying on the statements of fact submitted by the Plaintiff and unchallenged by the defendant in its response (docket items 47 and 54), it is established:

1. New levels of operation and maintenance charges require irrigation repayments to be reduced. (Mixed Fact and Law Contention 2.)
2. Actual power costs were determined but not revealed. (*Ibid*., 3; Fact Contention 1, 2.)
3. The annual cost to the District for joint facilities would be waived with the transfer of capital investments to the Bureau. (Fact Contention 3.)
4. The Bureau does bill the District for joint use costs. (*Ibid*., 14—16, 42—43).
5. Unlike the BPA/Bureau agreement, the District had not been relegated to "the greater of 1 mil/kwh or actual costs." (*Ibid*., 4.)
6. The Bureau bills the District for replacement and depreciation expenses, on top of capital cost reimbursement payments by the District. (*Ibid*., 31, 32, 37.)
7. The U.S. Army Corps of Engineers cost report for The Dalles Dam was on the basis of construction costs, not operating irrigation power costs. (*Ibid*., 38.)

## ARGUMENT

As the expert's report demonstrates in its introduction (exhibit A, page 1), she was retained in order to better understand the cost basis of the cost of generation charged to The Dalles Irrigation District. In order to determine that better understanding, her report addresses how the cost of generation is overstated, whether the cost basis is transparent, and how the

costs compare with the general escalation of the cost of power in the industry context. Her report specifically addresses irrigation customers and specifically addresses The Dalles Irrigation District. Her trial testimony will explicate these views.[1]

In Oregon, as is the general rule, evidence extrinsic to a contract is admissible to explain an ambiguity, irrespective of the parol evidence rule. *See Abercrombie v. Hayden Corp*., 320 Or. 279, 291, 883 P2d 845 (1994). Parol evidence is always admissible to establish the meaning of a writing. *Id*. *See also* Restatement 2[nd] of Contracts, section 214(C). And a court certainly may consider parol and extrinsic evidence to determine whether the terms of the agreement are ambiguous. *Abercrombie*, 320 Or. at 292.

What "such" power costs are, and how they are properly allocable here, might have been determinable by the District if the defendant regularly, consistently had complied with the contractual obligation that it provide an annual determination of actual costs. But that never occurred. We now know some actual cost data only as a result of a discovery that had taken place since the filing of this lawsuit. We now know that on those few occasions when actual costs were divulged by the defendant, they were less, substantially less at times, even than the initial minimum threshold price of one mil/kwh. (See Ex. A, pp. 10, 20, 21.)

Expert testimony is admissible even if it relies on hypothetical facts; it may not be excluded because it relies on one version of the facts rather than another. *Webb v. Utah Tour Brokers Assn*., 568 F.2d 670, 678 (10[th] Cir., 1977). Any expert with relevant expertise may testify; *see TUF Racing Products, Inc., v. American Suzuki Motor Corp.*, 223 F3d 585 (7[th] Cir, 2000). The trial court's determination that the evidence is relevant and reliable precludes an *in limine* exclusion motion which tests only the weight of the expert testimony. *See*

[1] The attached excerpts of the experts' 150 page plus report redact the major portions of the report dealing in damage calculations.

*Koppell v. Bd. of Education*, 97 F.Supp. 2d 477, 480 (SDNY, 2000); *Main Street Mortgage, Inc., v. Main Street Bancorp, Inc.*, 158 F. Supp. 2d 510, 516 (E.D. Pa., 2001).

In *Banks v. U.S.*, 2007 US Claims LEXIS 318 (CFC, September 28, 2007) the Court held expert assistance essential to reach conclusions necessarily derived from interpretations. *Ibid*. at 15. That is our case. While *Daubert* standards are of lesser concern in a bench trial than in a jury trial, expert testimony is admissible in any event to assist in fine tuning analyses of methodologies. *See Seaboard Lumber Co. v. U.S.*, 308 F.3d 283, 1302 (Fed. Cir., 2002).

As the expert's report notes (Exhibit A, page 18), the defendant had agreed that the Bonneville approach to cost sharing of annual operation, maintenance and replacement costs of jointly used facilities would not apply to the plaintiff District. See Expert Report, at page 4, at footnote 10 (Exhibit A, page 4). How then, can the defendant continue to charge the plaintiff for those jointly used facilities? Is the defendant continuing that charge? Can it be parsed through the defendant's produced records? Perhaps not on their face, but certainly with the assistance of an expert on rate designs, who had been dealing with sophisticated BPA and other governmental and private rate designs for many years.

The defendant's motion concludes with the suggestion that the plaintiff's expert may testify to the interpretation of the contract terms, the parties' apparent intent, as well as the technical and historic documents produced by the defendant. That is sufficient for this expert, for this case.

<u>CONCLUSION</u>

The defendant's motion should be denied.

DATED this 30th day of October, 2007

SHENKER & BONAPARTE, LLP

By: /s/ Arden E. Shenker

**Arden E. Shenker**
OSB No. 62082
ashenker@ashenkeresq.com
Shenker & Bonaparte, LLP
1500 SW First Avenue, Suite 630
Portland, OR 97201
Telephone: 503-294-1118
Facsimile: 503-294-0015

Attorneys for Plaintiffs
**THE DALLES IRRIGATION DISTRICT**

**Certificate of Filing**

I hereby certify that on the 30th day of October, 2007, a copy of the foregoing "Plaintiff's Response To Defendant's Motion To Exclude Expert" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

SHENKER & BONAPARTE, LLP

/s/ Arden E. Shenker

**Arden E. Shenker,** OSB No. 62082
OSB No. 62082
ashenker@ashenkeresq.com
Shenker & Bonaparte, LLP
1500 SW First Avenue, Suite 630
Portland, OR 97201
Telephone: 503-294-1118
Facsimile: 503-294-0015

Attorneys for Plaintiffs:
**THE DALLES IRRIGATION DISTRICT**