PEC 05-01

# Reclamation Manual

Directives and Standards

**Subject:** Water-Related Contract and Repayment Principles and Requirements

**Purpose:** To lay out the defining principles and essential points of policy behind the Bureau of Reclamation's water-related contracting and repayment program. The benefits of this Directive and Standard (D&S) are that it helps ensure that Reclamation continues to fulfill its contracting responsibilities according to the basic objectives and principles arising from relevant law and policy, by orienting staff, contractors, and the public to the essential concepts, objectives, requirements, and methods that drive and define Reclamation's water-related contracting and repayment activities.

**Authority:** Reclamation Law, as applicable,[1] beginning with the Reclamation Act of 1902 (ch. 1093, 32 Stat. 388)

**Approving Official:** Director, Office of Program and Policy Services

**Contact:** Office of Program and Policy Services; Contract Services Office, 84-56000

1. **Introduction.** The overarching objective behind Reclamation's water-related contracting, as stated in Reclamation Manual Policy PEC P05, is to make the required deliveries of water under Reclamation contracts, according, in each instance, to applicable law and policy. To do this effectively, Reclamation must take into account each contractor's relevant needs and circumstances, the generally growing demand on the West's water supplies for municipal uses, demands on supplies for environmental needs, and Reclamation's obligation to Native American Tribes. This D&S sets out the defining principles and points of policy through which the contracting and repayment program accomplishes its overarching objective.

2. **Defining Principles.**

   A. **Requirement to Contract.** To protect the interests of the United States, general Reclamation law requires contracts for the delivery and storage of project and non-project water, for the use of Federal facilities, and for the recovery of reimbursable project costs. Contracts are always required, unless a superseding Federal authority dictates otherwise, and must be executed pursuant to appropriate authority, whether found in general Reclamation law, project-specific legislation, or other congressional authorization. This is true whether the water is to be delivered for consumptive or non-consumptive use.

[1] As used here, the term "Reclamation law" refers inclusively to those laws, beginning with the Reclamation Act of 1902, that Congress enacts or has enacted to authorize Reclamation to perform its mission, whether these are original, amending, or supplementing laws.

B. **Agreement on Contract Terms.** To promote good customer relations and avoid disputes, both now and in the future, Reclamation must ensure that the parties to its contracts share its understanding of contract terms. Reclamation should work with the other party(ies) to resolve differences before entering into a contract, and should set out, with specificity, the meanings of the terms as they are to be used therein. Reclamation contracts must protect both the interests of the United States and those of its water users, while recognizing the relationship of its contracting activities to the numerous and complex issues facing the West (increasing urbanization, changing environmental issues, etc.). It best serves these ends, and is thus in the best interests of all concerned, for Reclamation to use clear language in contracts and related documents, and during negotiations, to ensure that the meaning and purpose of its contract terms are clear to all parties.

C. **Water Rates.** Reclamation's water-related contracts must protect the Federal investment and ensure that repayment of the reimbursable capital cost is made in accordance with Reclamation law. Subsections 9(c), (d), and (e) of the Reclamation Project Act of 1939 (1939 Act) require repayment of all reimbursable costs. Pub. L. 76-260; 43 U.S.C. § 485h(c), (d), and (e). The methods used in recovering these costs vary.

(1) **Irrigation Rates Generally.**

(a) Contractors' obligations to repay capital project costs under contracts made pursuant to subsection 9(d) of the 1939 Act are generally based on their ability to pay. The cost of the irrigation component is paid without interest. Costs beyond an irrigation district's repayment ability are generally paid by either power users through "aid to irrigation" or by municipal and industrial (M&I) users, where these sources are available. The same points apply to water rates established in contracts under subsection 9(e) of the 1939 Act, except that these contracts are renewed until the contractor has paid its obligation, or at least until it has the ability to repay its remaining obligation under a converted repayment contract, and the costs beyond the contractor's ability to pay within the contract term are therefore not shifted to other project beneficiaries.

(b) Note that, to ensure that irrigation water users are paying up to their ability throughout their repayment periods, it is Reclamation's policy that a contract provision calling for reviews of ability to pay every 5 years be placed in all new, renewed, or amended contracts. See Commissioner's Memorandum of July 7, 1999, "Ability-to-Pay Policy," as supplemented by memoranda of August 13, 1999, "Directives and Standards for Periodic Review of Irrigation Ability-to-Pay Analyses," and December 18, 2002, "Limitations Regarding the Ability-to-Pay Policy."

(2) **M&I Rates Generally.** M&I water rates are based on the costs allocated to M&I with an interest component added. See subsection 9(c) of the 1939 Act (cited above), as supplemented by the Water Supply Act of 1958 (Pub. L. 85-500, Title III; 43 USCA § 390b).

D. **Constraints on the Availability of Water (Water Shortages).** Understandings between Reclamation and its water users concerning the respective responsibilities and liabilities of the parties during times when the full amount of water under contract cannot be delivered are vital for protecting the interests of the United States, as well as those of the water users by allowing Reclamation to effectively and equitably deal with shortages.

3. **Points of Policy.** Reclamation will negotiate water-related contracts adhering to as many of the following points of policy as are applicable under the relevant circumstances.

A. Contract terms and repayment periods will be for the maximum duration provided by law (typically 40 years) unless (1) ability to pay justifies a lesser time, or (2) a contractor requests a shorter term. For those authorities that are silent regarding contract term (except those specifying instead a repayment period), such as the Warren Act (Pub. L. 61-406; 43 U.S.C. §§ 523 to 525), a 40-year maximum term will be used. Some project-specific authorizations may provide for a shorter term, such as the Central Valley Project Improvement Act (CVPIA), which limits contracts for irrigation water delivery to 25 years (Pub. L. 202-575, Title XXXIV § 3404[c]), and some may provide for a longer term, such as the Colorado River Storage Project authorization, which provides for a period of up to 50 years (Pub. L. 84-485; 43 U.S.C. § 620[c]). See Commissioner's Memorandum of October 23, 2001, "Policy for Terms of Contracts."

B. Following payout of a contractor's obligation pursuant to its repayment contract, no further costs will continue associated with that contract's construction obligation. However, operation and maintenance (O&M) costs and other provisions of the contract do continue.

C. Explanatory recitals will be written in a manner that communicates a clear understanding of the purpose of the contract. See Paragraph 2.B. above.

D. Contracts will ensure that (1) the Federal investment and (2) Reclamation's O&M costs for entering and administering contracts are recovered pursuant to law and policy. Costs for preparation of National Environmental Policy Act (NEPA) and Endangered Species Act (ESA) compliance documents are considered O&M costs for completed projects.

E. When entering new, renewed, supplemented, or amended contracts, appropriate environmental compliance will be performed. See Reclamation Manual Policy ENV P03 (NEPA) and ENV P04 (ESA); Departmental Manual 516 DM 14; and see

Pub. L. 91-190; 42 U.S.C. § 4321, et seq. (NEPA); Pub. L. 93-205; 16 U.S.C. § 1531, et seq. (ESA). Costs associated with NEPA, ESA, and other applicable regulations that are charged to the contractor as O&M costs should reflect only costs of those activities associated with the contract action. See Reclamation Manual Directive and Standard WTR 02-01.

F. Bases of Negotiation (BON) will provide information on the expected level of NEPA documentation and ESA consultation to be performed. Reclamation Manual Policy and Directives and Standards for BON requirements will be forthcoming. When use of a categorical exclusion is expected, the exclusion will be identified with a short discussion in support of its use. See 40 CFR 1508.4; 516 DM 14.5; and Reclamation Manual Policy ENV P03 and ENV P04.

G. Good water management will be encouraged and should be a goal for all contracts. Water conservation plans will be developed pursuant to the authority of section 210 of the Reclamation Reform Act of 1982 (Pub. L. 97-293, Title II; 43 U.S.C. § 390jj) and project-specific statutes such as the CVPIA (Pub. L. 102-575, Title XXXIV § 3405(e); 106 Stat. 4709). See Reclamation Manual Directive and Standard WTR 01-01; 43 CFR 427.1.

H. As a general matter, finding ways to make existing water supplies go further, whether through improved water conservation, investments in research and new technology, modernization of existing infrastructures, or other authorized means is encouraged.

I. Water banks should be used where available and authorized. Reclamation should promote water banking and similar concepts as means to help resolve water supply conflicts and shortages.

J. Transfers of O&M of project facilities will follow the guidance in the memorandum of June 25, 2001, "Guidelines for Negotiating and Executing Contracts for the Transfer of Operation, Maintenance, and Replacement of Project Facilities."

K. Reclamation will work in partnership with interested contractors to develop, review, and understand O&M programs and related budgets. While Reclamation retains authority over final O&M program budget and management decisions, it is Reclamation policy to actively provide all contractors who share in project O&M costs the opportunity to fully participate in the development and formulation of the relevant O&M program. See Reclamation Manual Policy WTR P05 and Commissioner's memorandum of March 18, 2004, "Guidance for Implementation of the Bureau of Reclamation Manual Policy WTR P05."

L. Full payment of annual O&M costs is required in advance of water delivery, as mandated by section 46 of the Omnibus Adjustment Act of 1926 ( Pub. L. 69-284; 43 U.S.C. § 423e), and section 6 of the 1939 Act (Pub. L. 76-260; 43 U.S.C. § 485e).

Advance payment of O&M costs will be adjusted to actual costs either during the year or at the year's end. See Reclamation Manual Policy and Directives and Standards WTR P01 and WTR 02-01.

M. Contract negotiations must be announced in advance, and an opportunity provided the public for review and comment of the draft contract. Associated public meetings are to be conducted in a manner that provides opportunities for the public to observe and provide meaningful input. See Reclamation Manual Policy and Directives and Standards CMP P03 and CMP 04-01; and see subsection 9(f) of the 1939 Act (Pub. L. 76-260, as amended by Pub. L. 97-293; 43 U.S.C. § 485h[f]).

N. Meetings held prior to the approval of the BON for the purpose of gathering and exchanging factual information will be clearly identified as such and conducted in a manner that will not prejudice the pending approval of the BON or the contract negotiations.

O. Subject to delegation of authority and approval of a BON, each Regional Director is responsible and accountable for conducting contract negotiations, for drafting proposed contracts, and for contract administration.